[L.A. No. 29966. In Bank. Sept. 28, 1972.]

MICHAEL PAUL THEODOR, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent:
THE PEOPLE, Real Party in Interest.

## COUNSEL

George H. Chula and Keith C. Monroe for Petitioner.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Respondent and for Real Party in Interest.

## OPINION

**MOSK, J.**—This case illustrates some of the procedural barriers confronting criminal defendants when a search warrant is issued primarily on information supplied by an unidentified informant. On February 4, 1971, the Municipal Court for the South Judicial District of Orange County issued a warrant authorizing a search of a house at 1267 Fairywood Lane, Laguna Beach. The warrant was issued on the basis of affidavits by Officer Celmer of the Los Angeles Police Department and by an undisclosed informant, and an in-chambers examination of the informant by the issuing magistrate.

Under the authority of the search warrant, several officers entered the unlocked house and discovered no one inside. During the search for occupants, one of the officers observed a room secured by two padlocks and one standard bolt affixed to the door. Peering through a window into the room, the officers saw what they believed to be contraband. They remained in the house "to see if any of the occupants showed up." Shortly thereafter, three boys, between 9 and 11 years of age, entered the house and were placed in a bathroom by the officers. A few minutes later defendant entered the house by using a key to the front door. A search of defendant produced three keys which fit the locks to the closed room. Subsequent search of the closed room resulted in the seizure of, among other items, 10 kilograms of marijuana and 1,708 pieces of paper, each of which was impregnated with approximately 10 dots of LSD.

Defendant was charged with violating Health and Safety Code sections 11530 (possession of marijuana), 11530.5 (possession of marijuana for the purpose of sale), 11910 (possession of restricted dangerous drugs), and 11911 (possession of restricted dangerous drugs for the purpose of sale). At a combined preliminary examination and hearing under Penal Code section 1538.5, subdivision (f), defendant moved both to quash the warrant on the ground it was issued in reliance, in part, on unreported oral testimony, and to require disclosure of the identity of the informant on the

ground he would be a material witness on the issue of defendant's guilt. Both motions were denied.

Defendant also sought to inquire into the truth of the matters contained in the affidavits which supported issuance of the search warrant. Although witnesses were present for that purpose pursuant to defendant's subpoena, the magistrate refused to allow defendant to question them. The magistrate further ruled that Officer Celmer could not be called for an examination into the truth of the contents of his affidavit.

After defendant was held to answer in superior court, his motions under Penal Code sections 995 and 1538.5 were denied. He now seeks a writ of mandate or prohibition. (Pen. Code, §§ 999a, 1538.5, subd. (i).) In support thereof, defendant urges the following contentions: (1) the magistrate improperly relied, in part, on unsworn and unreported statements in issuing the search warrant; (2) the magistrate erroneously failed to order the prosecution to disclose the identity of the confidential informant; (3) defendant should have been permitted to controvert the factual allegations contained in the affidavits of the officer and the informant; and (4) inquiry into the legality of the informant's arrest should have been permitted.

*The Affidavit and Issuance of the Warrant*

The warrant was issued on the basis of affidavits submitted by the undisclosed informant and by Officer Celmer, the latter essentially repeating the statements of the former. The informant's affidavit in substance is as follows: On or about February 3, 1971, he went to 1267 Fairywood Lane, a white single-story plaster house with red trim and redwood siding, surrounded on three sides by a six-foot wood fence. He was taken to the west bedroom of the house and there observed a pile of marijuana bricks, two feet high by three feet wide by one foot (one brick) deep, containing 20 to 50 bricks. A white male, 22 to 27 years of age, 5 feet 11 inches in height, weighing 170 pounds, with dark curly hair, whose name he did not know, gave him two and a half bricks weighing approximately five pounds. The informant was to return to Laguna Beach within two weeks with $300 for the marijuana. He was also given three pills by the described subject and was told one of the pills was LSD.

The affidavit further relates that the informant took the bricks to the Los Angeles airport, that he was arrested by a federal marshal and the bricks and pills seized; that he had never been convicted of a crime of moral turpitude but had been convicted of minor traffic violations; and that he had smoked marijuana on numerous occasions and knows its appearance and smell.

Both affidavits were subscribed and sworn to in the presence of the issuing magistrate. The magistrate also examined the confidential informant before the warrant was issued; this examination was not, however, recorded and transcribed. During the examination, the magistrate took handwritten notes. After he issued the search warrant, he sealed the signed affidavit of the informant and his notes in an envelope which was to be opened only on order of court.[1]

At the preliminary hearing, the magistrate read the contents of his handwritten notes into the record:

"Then I will relate to you the gist of the conversation as I reported it in my handwriting, handwritten notes, and I am going to exclude therefrom anything that I think would indicate in detail the identity of the informant.

". . . . . . . . . . . . . . . . . . . . . . . .

" . . . The first thing is, 'lived in,' and then, 'blank' as a city, which was given to me. Then comes the statement about where he sleeps. The next question and answer have to do with his place of birth. The next question had to do with his father's occupation. To all of these, he responded to them.

"The next one had to do with the place he last worked for and where.

". . . . . . . . . . . . . . . . . . . . . .

---

[1]When the envelope was sealed, the judge attached the following statement to the outside: "I have examined the confidential informant under oath on this date of February 4, 1971, along with the written affidavit form which was signed by him under oath administered by myself. This affidavit has been placed within the enclosed envelope and sealed from view, and said envelope shall not be opened except by authority of the Court, under penalty of contempt. This affidavit contains the substance of the testimony of the confidential informant, to-wit: his identity and specific details pertaining to the past experience that the aforesaid affiant confidential informant has had with the person and residence which are the subject of the warrant and which, if revealed to public view, would identify the said informant, and thereby interfere with effective law enforcement and tend to endanger the said informant's physical safety and well-being, as alleged by the affiant Mike Celmer in his affidavit in support of and petition for search warrant. This sealed affidavit also contains specific details relating to the knowledge of the affiant informant with regard to the information that the informant has given to affiant, Mike Celmer, which, if revealed to public view would tend to identify said affiant's informant, and thereby interfere with effective law enforcement and tend to endanger said informant's physical safety and well-being, as alleged by the affiant in his affidavit in support of the petition for search warrant. I am satisfied that the said informant exists and the affidavit herein contained supports the affidavit on the search warrant and under the rule of ROBERT LEE SKELTON v. SUPERIOR COURT, the Supreme Court decision filed on November 12, 1969, there is a reasonable basis for believing that the facts related by the informant are based upon either personal recent knowledge or some other reliable basis of recent origin, and that the affiant's informant is a credible witness."

"The place he last worked or the persons he last worked for and where. And next his marital status.

"For the record, those were considered by me as preliminary questions so that I could watch him and see his reactions. Questions were asked and answers given to determine his honesty or lack thereof, or competence or lack thereof.

"Then he was sworn in to speak only the truth.

"Then he described a meeting with a person he named and identified. Then he related to me, in response to my question, that he had been made no promise, except that he wanted to co-operate.

"That is the gist of two or three questions and answers.

"Then the question was asked and answered by him as to when and where he first smoked marijuana.

"Then questions and answers of his medical history and questions concerning his personal history. And then the questions concerning—the questions and answers concerning any credit sale of marijuana kilos.

"Now, all of those questions and answers for your information or for the record, whatever you wish, were asked by me and the answers were recorded by me to show what happened. But the purpose in asking the questions was to determine from the nature and kind of response he was making not whether those things were true or important, but generally what his demeanor was. And I considered none of those things as having any importance on the affidavit which he signed or having any importance on the issuance of a warrant, save and except they aided me in determining that he was—I am trying to think of an appropriate word. He was reasonably straight-forward and reasonably honest insofar as that is capable of being done in a ten to 15 minute interview. . . ."

*The Magistrate's Examination of the Informant*

■ Defendant's first contention is that the magistrate issued the search warrant without complying with the mandatory provisions of Penal Code section 1526.[2] Section 1525 of the code makes clear that a search warrant

---

[2]Section 1526 provides: "(a) The magistrate may, before issuing the warrant, examine on oath the person seeking the warrant and any witnesses he may produce, and must take his affidavit or their affidavits in writing, and cause same to be subscribed by the party or parties making same.

"(b) In lieu of the written affidavit required in subdivision (a), the magistrate may take an oral statement under oath which shall be recorded and transcribed. The transcribed statement shall be deemed to be an affidavit for the purposes of this

cannot be issued other than on affidavit.[3] Section 1526, subdivision (a), permits a magistrate to examine orally and under oath the person seeking the warrant and any witnesses who might be produced. It does require, however, that an affidavit or affidavits be taken. Under section 1526, subdivision (b), an oral statement, if properly recorded and transcribed, is deemed to be an affidavit. Here, the magistrate conducted an oral examination of the undisclosed informer; more importantly, the informer and Officer Celmer each submitted to the court a written affidavit. Defendant has not urged that the affidavits on their face are defective.[4] Thus, *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 873-874 [34 Cal.Rptr. 251] is not helpful. There the court held that the affidavit in question was insufficient and that the oral examination of the witness was also insufficient to support the issuance of the warrant.

Likewise, *Powelson* v. *Superior Court* (1970) 9 Cal.App.3d 357, 360-362 [88 Cal.Rptr. 8], also relied upon by defendant, is inapposite. There, in order to establish probable cause, the magistrate "took extensive sworn testimony from said officers in the presence of a court reporter," but no affidavits were subscribed. The court, in voiding the three search warrants involved, traced the history of section 1526, which prior to 1957 required the magistrate to take the *deposition* of the "complainant, and any witnesses he may produce" before issuing a warrant. (Stats. 1851, ch. 29, § 645, at p. 284.)

"The 1957 amendment replaced the word deposition with the word affidavit to make clear that a sworn statement of facts contained in an affidavit (not a question and answer type of proceeding) was required. This amendment indicates that the Legislature placed importance on the requirement that a written signed document containing facts tending to establish probable cause be available before the magistrate could issue the warrant. The 1957 amendment also placed *within the discretion of the magistrate* the question of whether also to examine, under oath, the person seeking the warrant. Prior to this amendment, the magistrate was *required* to examine the person under oath. The problem here presented is not one

---

chapter. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the magistrate receiving it and shall be filed with the clerk of the court."

[3]Section 1525 provides: "A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

[4]It is unclear whether defendant has abandoned the contention made below that the affidavits are insufficient on their face. To the extent he renews this assertion, we find that, especially in view of the magistrate's extensive examination of the informant, the affidavits are sufficient under the authority of *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485].

of 'technicalities without substance' but one of clear legislative command." (9 Cal.App.3d at p. 361; first italics added.)

In the case at bar, the magistrate exercised his discretion to examine the undisclosed informant orally. This examination did not produce an oral statement properly recorded and transcribed within the meaning of section 1526, subdivision (b). Hence, the fruits of the examination cannot be considered an affidavit. However, the magistrate did in fact take affidavits of the informant and Officer Celmer. We are not, therefore, presented with a situation in which, for example, an affidavit fails to comply with the second prong of the test enunciated in *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509], requiring the *affidavit* to contain underlying facts from which the magistrate can reasonably conclude that the informant was reliable, and instead the magistrate seeks to gather such information by unreported and unsubscribed questioning of the informant.

Here, the affidavits are valid on their face. The magistrate, notwithstanding the fact that he had before him two properly subscribed affidavits, opted in addition to conduct an oral examination of the informant pursuant to the discretion afforded to him by section 1526, subdivision (a). As part of his observations, he took handwritten notes. There is no policy which bars magistrates from taking additional measures to ensure that probable cause exists even when an affidavit on its face supports the issuance of a warrant. Indeed such a procedure indicates a thoroughness which merits approbation.[5]

*Disclosure of Identity of the Informant*

██ Defendant moved at the preliminary hearing and at the combined sections 995 and 1538.5 motion to compel disclosure of the confidential informant. It is manifest from counsel's argument below that defendant seeks disclosure both to challenge the probable cause of his arrest and to use the informant as a material witness to his guilt or innocence.

---

[5]Defense counsel, in his argument that the magistrate did not follow the mandate of section 1526, primarily emphasizes the *unreported* as opposed to the *unsworn* aspect of the informal hearing. We have concluded there was no error under these circumstances in taking unreported testimony. The code section, however, explicitly requires any oral testimony taken by a magistrate to be "on oath." Here, the following information was elicited before the informant swore to tell the truth: the city in which he lives, his address, place of birth, father's occupation, his most recent place of employment, his marital status. No information relating to the subject matter of the case was received by the magistrate before an oath was administered. We conclude that the magistrate did not violate section 1526 by asking a few preliminary questions, general in nature, before the informant swore to tell the truth.

■ It is well settled that California does not require disclosure of the identity of an informant who has supplied probable cause for the issuance of a search warrant where disclosure is sought merely to aid in attacking probable cause. (*People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal. Rptr. 859, 361 P.2d 587]; see also *McCray* v. *Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056].) It is equally well settled that when the defendant makes an adequate showing that the informer may be a material witness on the issue of guilt or innocence, disclosure should be compelled or the case dismissed. (*Price* v. *Superior Court* (1970) 1 Cal.3d 836 [83 Cal.Rptr. 369, 463 P.2d 721]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *McShann* (1958) 50 Cal.2d 802 [330 P.2d 33]; see also *Roviaro* v. *United States* (1957) 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623].)

■ To establish that the informer may be a material witness on the issue of defendant's guilt or innocence, the defendant has the burden of meeting the standard originally set forth in *People* v. *Garcia, supra,* and often repeated in the more recent decisions of this court (see, e.g., *Price* v. *Superior Court, supra,* 1 Cal.3d at p. 843; *Honore* v. *Superior Court, supra,* 70 Cal.2d at p. 168): "We emphasize that a defendant seeking to discover the identity of an informant bears the burden of demonstrating that 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.] That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. 'No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which might . . . result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.' [Citations.]" (*People* v. *Garcia, supra,* 67 Cal.2d 830, 839-840; italics omitted.)

■ As we stated most recently in *Price* v. *Superior Court, supra:* "In light of the difficult problem of a defendant who is unaware of the information which might be supplied by the unnamed informer, the defendant's burden of showing that the informer is a material witness on the issue of guilt does not require proof of that fact but only some evidence of a 'possibility' that the unnamed informer is a material witness." (1 Cal.3d at p. 843.)

 Unlike the presentation by counsel in *People* v. *Sewell* (1970) 3 Cal.App.3d 1035, 1038 [83 Cal.Rptr. 895], a case cited by the People, defense counsel here has not argued in conclusory fashion but with specificity: "I don't want to put the defendant on the stand at this time, but apparently his weight is fluctuating to about 130 pounds at this time rather than 170 pounds as indicated by the affidavit. It indicates that he has dark, curly hair. He has rather straight hair. There is no reference to a beard and the like, so that the only way we can controvert those facts here is to have the person that is supposed to have made them here . . . . [¶] . . . The indications so far as these facts are concerned here, are showing that he is obviously speaking of someone else. . . ."

While counsel appears to seek disclosure in order to attack probable cause, even though disclosure is not obligatory for such purpose *(People* v. *Keener, supra)*, he also seeks disclosure of a witness to support a plausible theory under these circumstances: that defendant was not the individual who supplied the informant with the marijuana and that defendant did not possess the marijuana and LSD found in the Fairywood Lane house. (Compare *Honore* v. *Superior Court, supra,* 70 Cal.2d 162, 168-170; *People* v. *Perez* (1965) 62 Cal.2d 769, 773-774 [44 Cal.Rptr. 326, 401 P.2d 934].)

Even though the physical discrepancy between defendant and the individual described by the informant would appear to satisfy defendant's burden as established in *McShann, Garcia, Honore,* and *Price,* additional evidence adduced at the preliminary hearing supports the conclusion that the informer may be a material witness on the issue of guilt.

First, the credit transaction itself, initially described by the magistrate as "incredible," plus the fact that the informer did not know the name of his alleged principal, casts some doubt on whether defendant was the principal, if indeed there was a principal. Furthermore, at the preliminary hearing one of the arresting officers testified that two young boys opened the unlocked door to the house and walked in while the officers were conducting their investigation. Defendant, however, used a key to "unlock" the door which was already open at the time the officers entered the house. These two events create an arguable inference, bearing directly on defendant's guilt or innocence, which might be explained by the informer: that someone else and not defendant exercised the dominion and control over the marijuana and LSD required for conviction of possession. *(People* v. *Redrick* (1961) 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255].)

Because the discrepancy in the physical description supplied by the informant, the unusual credit arrangement and the accessibility of others

to the Fairywood Lane house all bear on the issue of whether defendant was in possession of the drugs, and because the informant is a material witness on these issues, disclosure should be compelled. Furthermore, even though defendant need not prove for disclosure "that the informer was a participant in or even an eyewitness to the crime" (*Price* v. *Superior Court, supra,* 1 Cal.3d 836, 843), the informant here may have been both.

The issue of disclosure was properly raised at the preliminary hearing. ■ "The reasons that require disclosure at the trial also require disclosure at the preliminary hearing, for the defendant has the right at such hearing to cross-examine the prosecution's witnesses (Pen. Code, § 865) and to produce witnesses in his own behalf (Pen. Code, §§ 864, 866). The exercise of these rights at the preliminary hearing may enable the defendant to show that there is no reasonable cause to commit him for trial and thus to avoid the degradation and expense of a criminal trial." (*Mitchell* v. *Superior Court* (1958) 50 Cal.2d 827, 829 [330 P.2d 48]; see *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].)

■ Accordingly, we hold that defendant's motion to compel disclosure was improperly denied and that the prosecution must disclose the identity of the informant or incur a dismissal.

*Controverting Facts Contained in the Affidavit*

■ Defendant next complains that he was denied the opportunity to controvert the facts contained in the affidavits in support of the search warrant. He contends that on a motion to suppress evidence under Penal Code section 1538.5 a defendant may go behind the face of the affidavit in an effort to prove there was no probable cause for the issuance of the warrant. Defense counsel asserted below that "frankly, we do not believe the statements which are set forth in the affidavit, and we feel the factual inconsistencies will be shown by the examination of the affiant." Defendant was denied an opportunity to call Officer Celmer; he also suggests error in the refusal of the magistrate to allow him to examine other witnesses who in some way participated in the arrest of the confidential informant.

Defendant maintains that the Fourth Amendment and Penal Code sections 1538.5, 1539 and 1540 permit him to controvert the truth of the facts contained in the affidavit. Because we conclude that the Penal Code provisions authorize such an inquiry, we need not reach the constitutional issue.[6]

---

[6]The constitutional argument is primarily that the thrust of *Aguilar* v. *Texas, supra,* 378 U.S. 108, with its emphasis on the factual basis for an affiant's conclusion of probable cause, naturally presupposes correct, and not perjured or erroneous facts. "This principle is frustrated not only when a magistrate confronts conclusions rather

Section 1538.5 was enacted in 1967 following hearings and studies during 1965-1967 by the Assembly Interim Committee on Criminal Procedure. This project produced a series of committee recommendations,[7] a substantial portion of which became law. (Stats. 1967, ch. 1537, § 1, p. 3652.) Section 1538.5 provides a comprehensive scheme for challenging the introduction into evidence, and for the return, of items unlawfully seized. It sets forth the proper time for such motions, the procedure for appellate review and for extraordinary writs, and other significant procedural matters all relating to unlawful searches and seizures.

While section 1538.5 solved many of the procedural difficulties occasioned by the increased number of motions to suppress evidence, it is silent on whether a defendant may controvert the factual statements contained in an affidavit in support of a warrant. Thus section 1538.5 differs from Penal Code sections 1539-1540 which specifically provide for a challenge to the factual basis of the affidavit.[8] Prior to enactment of section 1538.5,

than facts in the affidavit, but also when substantial falsehoods are the basis on which a magistrate must find the existence or absence of probable cause. In either case, the effect is to destroy the magisterial power to draw an inference from accurate, objective information." (Comment, *The Outwardly Sufficient Search Warrant Affidavit: What If It's False?* (1971) 19 U.C.L.A. L.Rev. 96, 108 (hereinafter cited as UCLA Comment).)

"To begin at the beginning, when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." (*United States* v. *Halsey* (S.D.N.Y. 1966) 257 F.Supp. 1002, 1005; see also Note, *Testing the Factual Basis for a Search Warrant* (1967) 67 Colum.L.Rev. 1529, 1531.)

The United States Supreme Court left open the availability of challenges to the factual basis of an affidavit in support of a search warrant in *Rugendorf* v. *United States* (1963) 376 U.S. 528, 532 [11 L.Ed.2d 887, 891, 84 S.Ct. 825]: "[A]ssuming, for the purposes of this decision, that such attack may be made, we are of the opinion that the search warrant here is valid." The court later stated that the "factual inaccuracies depended upon by petitioner . . . were of only peripheral relevancy to the showing of probable cause" (*id.*), thereby implying that a factual inquiry could be made but that if the uncontroverted facts standing alone established probable cause the warrant would stand.

As one commentator has said, "Because a search warrant issues without opportunity for rebuttal, courts should be willing to investigate the accuracy of an underlying affidavit to enhance Fourth Amendment protection against the issuance of groundless warrants. Otherwise police will not be deterred from intentionally or negligently falsifying their affidavits in the hope that the resulting search will yield conclusive proof of criminal conduct." (Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence* (1971) 84 Harv.L.Rev. 825, 830 (hereinafter cited as Kipperman).)

[7]Procedure for Challenging Evidence Obtained by Search and Seizure, 22 Assembly Interim Committee Report No. 12 (2 Assem.J.Appendix (1967) at p. 7) (hereinafter cited as Assem. Com. Rep.).

[8]Section 1539 provides in part: "(a) If a special hearing be held in the superior court pursuant to Section 1538.5, or if the grounds on which the warrant was issued be controverted and a motion to return property be made . . . , the judge or magis-

sections 1539-1540 were employed as a principal means of suppressing evidence even though by their express terms, the two sections refer only to the return of property unlawfully seized. As stated in *People v. Prieto* (1961) 191 Cal.App.2d 62, 67 [12 Cal.Rptr. 577]: "Although, as an original proposition, we might have doubted whether the language of the sections literally applied to an attempt of a defendant to suppress the evidence, rather than to regain it, we think the cases have clearly disposed of the issue."

Because section 1538.5 has since replaced sections 1539-1540 as the principal device for suppressing unlawfully seized evidence, and yet unlike the latter two provisions does not expressly permit a defendant to controvert the facts contained in an affidavit, we are faced with the question of whether the Legislature, in enacting section 1538.5, intended by its silence to abrogate the established rule that a defendant could make such a factual challenge. █ We are reminded, in this connection, of the policy that it should not "be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." (*County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526].)

█ Before it was amended at the time of adoption of section 1538.5, section 1539 had been interpreted to allow a defendant to suppress evidence by showing the factual grounds upon which the warrant was issued were untrue. (See, e.g., *People v. Keener, supra,* 55 Cal.2d 714, 719; *People v. Peterson* (1965) 233 Cal.App.2d 481, 487 [43 Cal.Rptr. 457]; *Dunn v. Municipal Court, supra,* 220 Cal.App.2d 858, 866; *People v. Marion* (1961) 197 Cal.App.2d 835, 839 [18 Cal.Rptr. 219]; *People v.*

---

trate must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated by a shorthand reporter in the manner prescribed in Section 869."

Prior to 1967, the provision read: "If the grounds on which the warrant was issued be controverted, he must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated in the manner prescribed in section eight hundred and sixty-nine."

Section 1540 provides: "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

Section 1538.5, subdivision (a), provides in part: "A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: . . . (2) The search or seizure with a warrant was unreasonable because (i) the warrant is insufficient on its face; . . . (iii) there was not probable cause for the issuance of the warrant . . . ."

*Perez* (1961) 189 Cal.App.2d 526, 532 [11 Cal.Rptr. 456]; *People* v. *Dosier* (1960) 180 Cal.App.2d 436, 440 [4 Cal.Rptr. 309]; *People* v. *Lepur* (1959) 175 Cal.App.2d 798, 802 [346 P.2d 914]; *People* v. *Nelson* (1959) 171 Cal.App.2d 356, 360 [340 P.2d 718]; *People* v. *Phillips* (1958) 163 Cal.App.2d 541, 545 [329 P.2d 621]; *People* v. *Thornton* (1958) 161 Cal.App.2d 718, 721-722 [327 P.2d 161]; *Arata* v. *Superior Court* (1957) 153 Cal.App.2d 767, 770 [315 P.2d 473];[9] see also Comment, *supra*, 19 U.C.L.A. L.Rev. 96, 106-107, fn. 40, 122-123 and fn. 98.)

In 1966, this court decided *People* v. *Butler* (1966) 64 Cal.2d 842 [52 Cal.Rptr. 4, 415 P.2d 819], in which we held that a defendant need not avail himself of sections 1539-1540 as a prerequisite to attacking the validity of a warrant at a preliminary hearing or at trial. (64 Cal.2d at pp. 844-845.) In *Butler* Chief Justice Traynor traced the history of the two sections and noted that the provisions predated the exclusionary rule first adopted in this state in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513] and made applicable to all the states by *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]. Accordingly, it was concluded that "the Legislature's purpose in enacting those sections was not to regulate the procedure for objecting to the introduction of evidence in criminal trials but to afford the person from whom property was wrongfully seized an expeditious remedy for its recovery." (64 Cal.2d at p. 845.)

*Butler* is also significant for what it did *not* decide: that a defendant was prohibited from seeking to suppress evidence under a sections 1539-1540 motion. Instead, we held that he is not required to proceed under those two provisions prior to making an attack at the preliminary hearing or at trial. Thus *People* v. *Keener, supra,* 55 Cal.2d 714, and the Court of Appeal cases disapproved on other grounds in *Butler,* cases which allowed a defendant to attack the factual veracity of a warrant pursuant to sections 1539-1540, continued to provide support for that proposition after *Butler.* For example, in *People* v. *Kesey* (1967) 250 Cal.App.2d 669 [58 Cal.Rptr. 625], decided less than a year after *Butler,* the court upheld the availability of sections 1539-1540 as a means to suppress evidence even though the item was contraband and hence could not be returned lawfully.

A reading of *Butler* indicates that we were concerned only with the

---

[9]*Keener, Marion, Dosier, Lepur, Nelson, Phillips, Thornton,* and *Arata,* and *People* v. *Prieto, supra,* were all disapproved on other grounds in *People* v. *Butler* (1966) 64 Cal.2d 842, 845 [52 Cal.Rptr. 4, 415 P.2d 819]. (See discussion, *infra.*) *Perez* was disapproved on other grounds in *People* v. *Underwood* (1964) 61 Cal.2d 113, 125 [37 Cal.Rptr. 313, 389 P.2d 937].

*timing* of various search and seizure motions. The case is not to be interpreted as limiting a defendant's right to suppress evidence by denying him relief under sections 1539-1540 or precluding him from controverting the factual basis of the affidavit. (See 64 Cal.2d at pp. 844-846.) Neither the majority nor the dissenting opinions in *Butler* intimate that a defendant should be denied an opportunity to contest the facts contained in an affidavit under sections 1539-1540; the disagreement was purely over a matter of procedure, i.e., *when* the motion was to be made. (See *People* v. *Phillips, supra,* 163 Cal.App.2d 541, 545.)

Soon after our decision in *Butler* the Assembly Interim Committee on Criminal Procedure released its report on the then current procedure for suppressing evidence obtained by an unlawful search or seizure. (Assem. Com. Rep., *supra.*) In its summary of existing law, the report stated: "Although [sections 1539-1540] pertain to the return of property which has been illegally seized the procedure is also used as a device to quash a warrant. Thus the procedure is available to test the seizure of property which cannot be returned because of its contraband nature. [¶] A motion pursuant to sections 1539 and 1540 tests the truthfulness of the facts supporting the issuance of a search warrant . . . ." (Assem. Com. Rep., *supra,* at p. 11.)

It is clear from the report that the committee was not concerned with eliminating the right of a defendant to controvert the facts contained in an affidavit. Its proposals, which essentially became section 1538.5, were designed to enact a comprehensive scheme for the timing of search and seizure motions: "The existing procedure results in an unnecessary expenditure of time and effort because it allows search and seizure questions to be raised repeatedly within the context of criminal proceedings." (*Id.* at p. 13; italics omitted.) "The committee recommends that the procedure for challenging the legality of a search and seizure question be changed (1) to provide for final determination of these questions prior to trial; and (2) to allow the prosecution greater latitude in initiating appellate review of an adverse decision on a search and seizure issue." (*Id.* at p. 18; italics omitted.)

Finally, the committee indicated that the same procedure should be used regardless of whether defendant sought to suppress evidence or only sought to have his property returned. This intent was effectuated in the first clause of section 1538.5: "(a) A defendant may move for the return of property or to suppress as evidence . . . ."

It is undisputed that a defendant could controvert the facts contained in an affidavit prior to *Butler* and also prior to the enactment of section

1538.5, with no undue burden on the administration of criminal justice. It is likewise clear that *Butler* and section 1538.5 were concerned with the timing of a motion to suppress; neither attempted to limit the substance of the motion. Accordingly, in the absence of an express indication to the contrary in the statute, we cannot assume the Legislature when it enacted section 1538.5 intended to abrogate the rule that defendants may attack the truthfulness of the affidavit. (Cf. *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 159 [98 Cal.Rptr. 649, 491 P.2d 1].) This position was adopted *sub silentio* in *Lockridge* v. *Superior Court* (1969) 275 Cal.App. 2d 612, 622 [80 Cal.Rptr. 223], and based upon the foregoing statutory history and analysis, we approve the decision on this issue.[10]

This conclusion is fortified by pondering the anomalous result if section 1538.5 were to be interpreted as barring challenges to the truth of an affidavit. Since section 1539 continues to permit a defendant to controvert the facts upon which the warrant is issued, to preclude challenge under section 1538.5 would allow a factual inquiry if the item sought to be suppressed was not contraband, but would preclude inquiry into truthfulness if it was contraband. Such a distinction bears no discernible relationship to Fourth Amendment principles. The practical effect of such a holding would be to encourage all defendants moving to suppress evidence to seek a hearing on whether the item was contraband, a determination to which they would be clearly entitled under sections 1539-1540. Whether the warrant would be quashed because of false statements critical to a showing of probable cause would, therefore, depend upon chronology; that is, whether the magistrate heard the challenge to the factual accuracy of the affidavit before or after he made a determination of the contraband nature of the item involved. Such a curious result could not have been intended by the Legislature, which, by enacting section 1538.5, attempted, inter alia, to minimize the differences between objects which a defendant sought to suppress and those which he sought to have returned. (See Assem. Com. Rep., *supra*, at p. 18.)

■ We now turn to the scope of the challenge to the accuracy of the affidavit. At the outset we note that misstatements contained in an affidavit generally fall into three categories: reasonable errors made in good faith; negligent mistakes; or intentional falsehoods. Misinformation may be in the form of inaccurate personal observations of law enforcement personnel,

---

[10]The People's reliance on cases such as *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 150, for the proposition that a defendant may contest only the sufficiency of the warrant on its face is misplaced. In *Skelton* the defendant did not seek to controvert the veracity of the facts contained in the affidavit. Accordingly, we merely set forth the applicable standard for reviewing on appeal a magistrate's conclusion that the affidavit was sufficient on its face to support the issuance of a warrant.

an officer's miscalculation of the reliability of an informant or inaccurate information gathered by the informant. (See Comment, *The Outwardly Sufficient Search Warrant Affidavit: What If It's False?* (1971) *supra*, 19 U.C.L.A. L.Rev. 96, 102, fn. 26; Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence* (1971) *supra*, 84 Harv. L.Rev. 825, 831-832; see also *United States* v. *Pearce* (7th Cir. 1960) 275 F.2d 318, 322 [information alleged to have been received from informant actually received from affiant/officer's superior].)[11]

■ In assessing what standard should be employed in testing the truthfulness of an affidavit in support of a search warrant, we are guided by the general principle that probable cause, not certainty, is the cornerstone of the warrant-issuing process. (*Dumbra* v. *United States* (1925) 268 U.S. 435, 441 [69 L.Ed. 1032, 1036, 45 S.Ct. 546].) "Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' a crime has been or is being committed." (*Brinegar* v. *United States* (1949) 338 U.S. 160, 175-176 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302] [search without a warrant]; see 3 C. Wright, Federal Practice and Procedure (1969) § 662, at p. 22.)

The standard of probable cause is most often relevant in the determination of whether the inferences drawn by a magistrate or officer from the facts presented (see *Aguilar* v. *Texas, supra; Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]) are reasonable. (*Dumbra* v. *United States, supra,* 268 U.S. 435, 441.) However, if a magistrate is presented with false or inaccurate information in an application for a warrant, the inferences he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant. Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate. Because of the significance rightfully attached to the neutral magistrate,

---

[11]We also note that although most mistakes occur in relating events which have transpired, an affidavit may be inaccurate because of the failure to *include* information which might otherwise negate a finding of probable cause. Thus in *United States* v. *Averell* (E.D.N.Y. 1969) 296 F.Supp. 1004, a prosecution for interstate transportation of stolen wigs, the defendant challenged the accuracy of the warrant on the ground that four items of information, including the fact that defendant was in the wig business, were omitted from the affidavit. The court rejected the contention, holding that "the affidavits were factually accurate and that no *material* information was withheld from the Commissioner which would have prevented a finding of probable cause . . . ." (296 F.Supp. at p. 1018; italics added.)

at least one commentator suggests (see Comment, *supra,* 19 U.C.L.A. L.Rev. at pp. 143, 145) and some cases imply (see *Lockridge* v. *Superior Court, supra,* 275 Cal.App.2d 612, 622; *United States* v. *Nagle* (N.D.N.Y. 1929) 34 F.2d 952, 954; *United States* v. *Henderson* (D.D.C. 1954) 17 F.R.D. 1, 2) that if inaccuracies are demonstrated they must be excised from the affidavit regardless of whether the errors were reasonable under the circumstances. Under this approach the court is to determine whether probable cause existed for the search only on the basis of the remaining truthful information.[12]

We reject this approach as being inconsistent with the overriding principle of reasonableness which governs the application of the Fourth Amendment to the criminal law. Instead, we conclude that only when the affiant has acted unreasonably in making factual mistakes must those errors be excised from the affidavit before testing the existence of probable cause. While undeniably misstatements impede the function of the magistrate, once it has been determined that the affiant has acted reasonably under the circumstances, little more can be required of him. To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment.

---

[12]In *Henderson,* the warrant was issued on the basis of two items of information: "investigation had disclosed that two unlisted telephone numbers seized among lottery paraphernalia were in the name of defendant at the premises searched, and that he had a previous record for violation of the lottery laws." (17 F.R.D. at p. 2.) Upon rehearing counsel demonstrated that it was not defendant but another person with the same name who had the prior record. The court held that if it were to ignore the misinformation concerning the previous violations, the remaining facts (to wit: the presence of defendant's telephone numbers) would not constitute probable cause.

The government argued that since the officer obtaining the warrant "honestly believed" the defendant was the same person previously convicted, the warrant was not tarnished. The court replied (at p. 2): "But to give the same effect to mistaken facts as to correct facts which may be *ascertained by investigation* would impose an undue burden on unfortunate innocent persons who happen to have the same names." (Italics added.) By its emphasis on "correct" versus "mistaken" facts, the court appears to have ruled that all errors, regardless of how reasonably an affiant may have acted, must be deleted.

In *Lockridge,* the court also found several allegations in the affidavit to be either "false or erroneous." It then excised the inaccuracies in the face of the People's claim that the errors were made in good faith and concluded that on the basis of the remaining information probable cause did not exist. (275 Cal.App.2d at pp. 622, 625.)

In *Nagle,* the court declared that if the affiant was "mistaken, or made a false affidavit, it would be the duty of the commissioner to vacate the search warrant." (34 F.2d at p. 954.) There defendant challenged the validity of the affidavit but the finding of probable cause was sustained.

The right to inquire into the accuracy of an affidavit in other jurisdictions, especially in federal courts, remains unsettled; most of the decisions in this area have concentrated on the issue of whether the challenge itself is permitted and have failed to prescribe the standard to be employed when an inquiry is allowed: (See, e.g., *United States* v. *Dunnings* (2d Cir. 1969) 425 F.2d 836, 839-840; *United States* v. *Bowling* (6th Cir. 1965) 351 F.2d 236, 241; *King* v. *United States* (4th Cir. 1960) 282 F.2d 398, 399; *United States* v. *Pearce, supra,* 275 F.2d 318, 322; *Kenney* v. *United States* (1946) 157 F.2d 442 [81 App.D.C. 259]; *United States* v. *Halsey, supra,* 257 F.Supp. 1002, 1005; *United States* v. *Gianaris* (D.D.C. 1960) 25 F.R.D. 194, 195; *O'Bean* v. *State* (Miss. 1966) 184 So.2d 635, 638-639; *Lerner* v. *United States* (D.C.Mun.Ct.App. 1959) 151 A.2d 184, 187; *Southard* v. *State* (Okla. Crim. 1956) 297 P.2d 585, 588; *People* v. *Burt* (1926) 236 Mich 62 [210 N.W. 97, 101].)

However, the several cases that have attempted to deal with the problem in greater depth have concluded that the proper standard is one of reasonableness. For example, in *United States* v. *Freeman* (2d Cir. 1966) 358 F.2d 459, 463, footnote 4, the court stated: "A defendant may be able to challenge the veracity of recitals of 'previous reliability' by a motion to suppress pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. [Citations.] Such a procedure would diminish the danger of a warrant issuing on an officer's good faith misjudgment as to the reliability of an informant, as well as dangers of police laxity or bad faith. The temptation for officers to include unjustified recitals of informants' reliability would be reduced."

The *Freeman* court acknowledged that a mere good faith belief in the accuracy of the facts contained in an affidavit is insufficient. This conclusion is in accord with established search and seizure principles which declare that in assessing probable cause, good faith alone is insufficient.[13] Moreover, the view of the second circuit that factual challenges will deter "police laxity" in acquiescing in intentional falsehoods, apparently contemplates that an affiant must neither act in bad faith in acquiring information nor act unreasonably in believing the truth of such information.

Similarly in *United States* v. *Poppitt* (D.Del. 1964) 227 F.Supp. 73, defendant complained that the warrant was defective because it described

---

[13]"If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." (*Beck* v. *Ohio* (1964) 379 U.S. 89, 97 [13 L.Ed.2d 142, 148, 85 S.Ct. 223].) "Good faith . . . is immaterial, and cannot serve to rehabilitate an otherwise defective warrant." (*Lockridge* v. *Superior Court, supra,* 275 Cal.App.2d 612, 622.)

the place to be searched as a "one-family . . . dwelling." The structure was, in fact, a multiple resident dwelling. "The question to be resolved is whether evidence obtained under a search warrant which has been properly issued initially by the Commissioner, must be suppressed when later evidence discloses that it applies not only to premises occupied by the defendant, but also to an apartment occupied by three other persons who, so far as it appears, are in no way implicated in the alleged crime. The answer would appear to depend upon whether [Internal Revenue Service Agent] Camplone, in executing the affidavit, had *probable cause* to believe that the house . . . was, as he stated, a single family dwelling. . . . [¶] [A]ccess to the second story apartment was by means of a doorway inside of a glassed-in porch, which led to a vestibule inside the house, from which a stairway led to the apartment. On the outside of the house there was no indication that it was anything other than a one family dwelling. Defendant has pointed to nothing which would have put Camplone on notice that the second floor was rented to third persons. Camplone has *reasonable* grounds to believe that the house was occupied only by defendant and her husband, and he was justified in describing it as he did in his affidavit." (227 F.Supp. at pp. 77, 78; italics added.)

Further support for the rule of reasonableness is found in *United States* v. *Perry* (2d Cir. 1967) 380 F.2d 356, in which the defendant unsuccessfully sought to quash the warrant solely because of the presence of errors in the supporting affidavit, notwithstanding the fact the police had acted reasonably. There the court said (at p. 358): "Probable cause is established if the facts alleged by the informant, if true, establish illegality and the affiant-agent has reasonable grounds for believing in the truth of the allegations." (See also *United States* v. *Ramos* (2d Cir. 1967) 380 F.2d 717, 720 [defendant contended information provided by informant "inherently incredible"]; 3 C. Wright, Federal Practice and Procedures, *supra*, § 673, at p. 106.)

That reasonableness is the test governing challenges to the facts set forth in an affidavit is demonstrated by the rules which apply in the analogous area of warrantless arrests and searches. In *Hill* v. *California* (1971) 401 U.S. 797 [28 L.Ed.2d 484, 91 S.Ct. 1106], affirming *People* v. *Hill* (1968) 69 Cal.2d 550 [72 Cal.Rptr. 641, 446 P.2d 521], police admittedly had probable cause to arrest defendant Hill. They proceeded to Hill's address and encountered an individual who professed to be one Miller. The officers nevertheless arrested Miller, believing on the basis of descriptions received from various sources and statements made by Miller that he was in actuality Hill. Pursuant to the arrest they searched Hill's house and the fruits of that search were introduced at trial. In affirming, the Supreme Court said: "The upshot was that the officers in good

faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." (401 U.S. at pp. 803-804 [28 L.Ed.2d at pp. 489-490]; see also *id*. at p. 802 [28 L.Ed.2d at p. 489].)

The wisdom of the court's holding in *Hill* is manifest. Under those circumstances in which an officer makes an arrest without a warrant (see Pen. Code, § 836), he is in essence required to perform two tasks: first, he must ascertain what events have transpired, i.e., what are the facts; second, from those facts he must deduce whether a crime has been committed. It is to this task in a warrantless search or arrest that the probable cause standard usually refers. (See *Brinegar* v. *United States, supra,* 338 U.S. 160, 175-176 [93 L.Ed. 1879, 1890-1891] [search without a warrant]; *People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583] [arrest without a warrant].) *Hill* correctly applies the probable cause guideline to the facts upon which those inferences are drawn. Similarly, the broad statement of the court in *Brinegar* v. *United States, supra,* 338 U.S. 160, 176 [93 L.Ed. 1879, 1891], recognizes that in those instances in which a warrantless search is allowed, officers are permitted reasonable factual errors. "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." (See also Note (1966) 34 Fordham L.Rev. 740, 745.)

There is no reason to hold an officer to a standard of absolute accuracy in those instances in which the inference-drawing power is reserved for the magistrate who is to issue a warrant, when the officer is only required to reach a reasonable factual deduction in those instances in which he makes the inferences and acts without a warrant. In both cases, the constitutional standard is one of reasonableness.

■ Accordingly, we hold that pursuant to a motion under Penal Code section 1538.5, a defendant may challenge the factual veracity of an affidavit in support of a warrant and if statements contained therein are demonstrated to be false and if the affiant was unreasonable in believing

the truth of such information, those facts must be excised from the affidavit and probable cause tested from the remaining truthful information.[14]

We now turn to the issue of the burden of proof on such matters. ▉ In general, the burden is on the defendant to raise the issue of illegally obtained evidence. (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 335 [341 P.2d 1]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) ▉ Thus if the defendant attempts to quash a search warrant, as defendant here seeks to do, the burden rests on him. (*People* v. *Wilson* (1967) 256 Cal.App.2d 411, 417 [64 Cal.Rptr. 172] (hg. den.).)

In cases in which the defendant also challenges the accuracy of an affidavit, the question is more complex since there are two preliminary issues to resolve: (1) did the affidavit contain factual misstatements; (2) if so, and if the misstatements were not intentional, did the affiant nevertheless act reasonably in believing the facts to be true. Applying the general rule it is manifest that the defendant must carry the initial burden of demonstrating the inaccuracy or falsity of allegations set forth in the affidavit. A presumably reliable person has attested to the truth of the matters alleged in the affidavit and a magistrate has in the exercise of his impartial function determined that the affidavit was truthful and acted upon it. Thus the state has sustained its initial burden by virtue of the affidavit itself. ▉ If the defendant seeks to controvert the allegations contained therein, it is his duty to come forth to reveal any inaccuracies. (Cf. *People* v. *Alfinito* (1965) 16 N.Y.2d 181, 186 [264 N.Y.S.2d 243, 246, 211 N.E.2d 644]; Note (1966) 51 Cornell L.Q. 822, 825-826.)

---

[14]We do not hold that the presence in an affidavit of inaccurate facts caused by unreasonable police activity automatically vitiates the warrant. We require only that such information be deleted and the warrant's validity be tested by the remaining accurate information. The warrant will not be quashed if that remaining information is sufficient, under settled standards, to constitute probable cause for the search.

We add that as the prosecution is thus barred from relying on negligent mistakes in an affidavit, it is a fortiori barred from relying on information known by the affiant to be intentionally false. Since in the latter situation there obviously can be no question of showing a reasonable belief in the truth of deliberate misinformation, any such statements must also be stricken prior to testing the warrant for probable cause. The issue of whether the use of intentional misstatements should result in automatically quashing the warrant without regard to the effect of those misstatements on probable cause was not timely briefed, and we therefore do not reach it.

However, once the defendant has demonstrated to the court that the affidavit contains errors, the burden then shifts to the prosecution to establish that the inaccuracies were included as the result of reasonable misapprehensions. Since inaccurate statements in an affidavit frustrate the inference-drawing process, the magistrate's function is circumvented in much the same manner as when no warrant is obtained. To require the prosecution to demonstrate the reasonableness of any inaccuracies, therefore, is consistent with the well established rule applicable to warrantless searches and arrests: the burden "rests on the prosecution to show proper justification." (*Badillo* v. *Superior Court, supra,* 46 Cal.2d 269, 272; see also *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 192 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Fein, supra,* 4 Cal.3d 747, 752.)

To require the defendant to prove unreasonableness would impose an insurmountable burden on him. Since the affiant knows the circumstances under which he was led to believe that the inaccurate facts were true, he alone is in a position to justify his errors as reasonable under the circumstances. In *King* v. *United States, supra,* 282 F.2d 398, the affidavit leading to the arrest of defendant was allegedly prepared by one Rutha Douglas. At the hearing the only "Ruth" Douglas in town testified that she did not make the affidavit purportedly made by her. Reversing the conviction, Chief Judge Soboleff noted (at p. 399) that no other "person was produced then or, so far as anyone has revealed, was such a person located later. In these circumstances it is not reasonable to require the defendant to scour the world to prove a negative. The short of it is that an oath by a person claiming a spurious identity is the sole basis for the warrant and the search. The uncontroverted facts admit of no other interpretation."

The court's brief discussion in *King* supports our conclusion that once a defendant makes a prima facie showing of inaccuracy, the burden then shifts to the prosecution to negate that showing. We also conclude that once the court finds that the affidavit contains an inaccurate statement of fact, it is incumbent on the prosecution to demonstrate that the affiant's belief that the erroneous statements were true was nonetheless reasonable under the totality of circumstances. (See also *Chin Kay* v. *United States* (9th Cir. 1962) 311 F.2d 317, 324 (Murray, J., dissenting).)

We now apply these general rules to the case at hand. The magistrate denied defendant the opportunity to controvert the facts set forth in the

affidavits at least in part on the ground that defendant had failed to make a satisfactory offer of proof. ▮▮ Before a hearing is required to test the veracity of an affidavit, the defense must relate, with some specificity, its reasons for contending that the affidavit is inaccurate. As the court said in *United States* v. *Halsey, supra,* 257 F.Supp. 1002, 1005-1006, in holding that defendant was not entitled to a hearing: "This is not to say that there may never be occasions for trying out the truth of an affidavit on which a search warrant issues. It is only to say that there is no justification for allowing such a *de novo* trial of the issuing magistrate's determination as a routine step in every case. Until or unless the defendant has at least made some initial showing of some potential infirmities he proposes to demonstrate, the magistrate's acceptance of the affidavit as truthful should be enough. . . . [¶] [W]e reemphasize that defendant's bland and sweeping claim is for a right to try the affiant in every case, with no foundation beyond the hope that some inaccuracy or falsehood may emerge. The problem may be quite different where some initial showing of some sort—some suggestion of a basis or area of doubt—is tendered." (See also *United States* v. *Dunnings, supra,* 425 F.2d 836, 840; *United States* v. *Roth* (S.D.N.Y. 1968) 285 F.Supp. 364, 366; *Chin Kay* v. *United States, supra,* 311 F.2d 317, 324 (Murray, J., dissenting); 3 C. Wright, Federal Practice and Procedure, *supra,* § 673, at pp. 106-107.)

Here defendant sought to examine the informant, Officer Celmer, two airline officials and a United States marshal to ascertain, among other things, whether there was any unlawful coercion of the informant by the arresting officers at the airport. On another occasion counsel stated that the discrepancy between the physical description of the informant's contact supplied in the affidavit and the likeness of defendant indicated that the informant was "obviously speaking of someone else." Even if it were demonstrated that no one with a physical description matching the informant's alleged contact resided at the Fairywood Lane address, such error, if deleted, would not necessarily leave insufficient information to support a finding of probable cause. However, the defense theory of coercion gives rise to an inference that the police may have acted improperly when arresting the informant and that this conduct may have induced the informant, while under police restraint, to invent all or part of his story or to base it merely on circulating rumors. If the defense allegation of coercion of the informant is true, the burden of the prosecution to show that the arresting officers' reliance on the informant's statements was reasonable becomes proportionately heavier.

Whether the naked offer of coercion coupled with defendant's other contentions advanced at the hearing constitute a sufficient offer of proof, we need not decide. Since much of the confusion evident at the combined

section 1538.5, subdivision (f), hearing and preliminary examination was caused by refusal to disclose the informant's identity, and since we hold that disclosure is required, it is likely that on remand both counsel will produce a more intelligible record. At that time the magistrate will be able to exercise discretion to permit or deny inquiry into the truth of the matters contained in the affidavit on the basis of defendant's proposed theory of proof and to decide whether examination of the informant, Officer Celmer, and other witnesses is appropriate.[15]

## Challenging Arrest of the Informant

Additional problems at the preliminary hearing involved two areas of law in which distinctions predicated on delicate lines have developed. By compelling disclosure of the informant because he is a material witness on the issue of guilt, we are able to avoid the first dispute: whether an informant's identity must be disclosed so that the defendant is able to challenge the legality of the informant's arrest. In *Kaplan* v. *Superior Court, supra,* we recently reaffirmed the vicarious exclusionary rule originally adopted in *People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855]. That rule allows a defendant to attack the validity of a search or arrest of another, if relevant. It is obvious that the policy of deterring unlawful police conduct cannot be effectuated by means of the vicarious exclusionary rule if the defendant is barred from learning the identity of the witness who was illegally arrested or searched. However, we subject this topic to

[15]Even though we hold there was error in the refusal to disclose the identity of the informant and that this error undoubtedly affected defendant's ability to make a specifically detailed offer of proof as to the truth of the affidavits, we note that the matter was submitted to the superior court judge on the transcript of the combined section 1538.5, subdivision (f), hearing and preliminary examination. Renewal of a motion to suppress evidence is permitted in superior court under section 1538.5, subdivision (i). This subsequent hearing, however, does not permit the superior court to review issues of law decided by the magistrate under subdivision (f) but is itself a de novo hearing. Furthermore, as we stated in *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 6-7 [291 P.2d 929], only in rare cases will prohibition lie to review rulings of the magistrate on the admissibility of evidence made at the preliminary hearing.

Accordingly, if a defendant contends that the magistrate erred in denying him the opportunity to present evidence on a theory of an inadequate offer of proof, the correct procedure is not to submit the matter solely on the transcript, but to renew the motion and offer of proof in superior court. The court hearing the section 1538.5, subdivision (i), motion is not to review the propriety of the magistrate's ruling on the offer of proof. However, in this instance the failure to disclose the informant so infected the proceedings combined at the preliminary examination and hearing under section 1538.5, subdivision (f), including defendant's ability to make a sufficient offer of proof, that even under the "more selective test" of *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 875 [59 Cal.Rptr. 440, 428 P.2d 304], defendant here is entitled to a new preliminary hearing at which time he can renew his offer of proof and other motions. (See *id.* at pp. 878-879.)

no further explication in view of our conclusion that in this instance the informant's identity must be disclosed because he may be a material witness on the question of defendant's guilt.

The second conflict also involved the arrest of the informant and arose because defendant, not knowing the informant's identity, was unaware of all the circumstances surrounding his arrest. Not surprisingly, counsel for both sides argued in the dark as to whether evidence obtained from the informant was to be suppressed because it was the result of an illegal arrest or search (*People* v. *Martin, supra,* 45 Cal.2d at pp. 759-761) or whether such evidence was to be admitted because the alleged impropriety, if any, was limited to a violation of the informant's *Miranda* rights (*People* v. *Varnum* (1967) 66 Cal.2d 808, 813 [59 Cal.Rptr. 108, 427 P.2d 772]). The legal principles involved are relatively easy to distinguish; had the informant's identity been disclosed and the defendant apprised of all the facts surrounding the informant's arrest, it can be assumed that counsel for both sides would have argued with more lucidity as to whether *Martin,* on the one hand, or *Varnum,* on the other, applies to the case at bar. By compelling disclosure, our holding here should simplify subsequent disposition of this issue.

Let a peremptory writ of prohibition issue restraining respondent court from conducting criminal proceedings in this matter until defendant is afforded relief consistent with the views hereinabove expressed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., and Burke, J., concurred.

The petition of the real party in interest for a rehearing was denied November 16, 1972, and the opinion was modified to read as printed above.