The appellant, Richard Franks, pleaded guilty to possession of a controlled substance and was sentenced to seven years' imprisonment. The sentence was split, with one year's imprisonment and five years' probation. The appellant reserved *Page 1272 
the right to raise on appeal the issue of the unlawfulness of the search and seizure that produced the evidence against him. On appeal, the appellant challenges the validity of the search warrant on two grounds.
 I
The appellant was an employee of Buccaneer Homes, a mobile home plant in Hamilton, Alabama. Cocaine was found in the appellant's office desk during the execution of a facially valid search warrant. The warrant was issued after Alabama Bureau of Investigation agent Kenneth King submitted the following affidavit:
 "Agent King of the Alabama State Troopers Narcotics Unit has received information from a confidential reliable informant who has provided reliable information to Agent King on at least eight occasions in the past which has resulted in arrests and convictions on several of those occasions that Richard Franks has cocaine located in the bottom left drawer of the desk located in the office of Richard Franks, and in control of Richard Franks. In addition, said confidential reliable informant has stated that the cocaine is located in a clear plastic baggie, and that there is a portable grinder with the cocaine. Said confidential informant has seen the cocaine within the past hour."
R. 27 (emphasis added). Agent King first testified that the confidential informant called him between 4:00 and 5:00 a.m. on the morning of December 7, 1990. King later testified that he was not certain of the exact time he received the information, but that he began preparing the affidavit immediately after the informant's call. He telephoned Hamilton police officer Donnie Dobbs and dictated to Dobbs what to type in the affidavit for the warrant. King called Dobbs between 6:00 and 6:30 a.m. R. 65.
During a hearing on a motion to suppress the evidence, the appellant argued that the emphasized portion of the affidavit should be excised under the rule of Franks v. Delaware,438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because it was false or made with reckless disregard for the truth.
The appellant sought to establish the falsity of the foregoing information by presenting evidence that during the time period the informant claimed to have seen cocaine in the appellant's desk, the appellant's office was either locked or subject to limited access by two plant security guards. Evidence at the hearing on the motion to suppress tended to prove that the appellant's office was open to plant security personnel all night until 5:00 a.m., at which time the security guards locked the office and reported to the plant guard shack.
The appellant made an offer of proof that one of the security guards entered the appellant's office to vacuum during the night but did not look in the appellant's desk, did not see any cocaine, and did not call any law enforcement official to report the presence of contraband.
The appellant called the other security guard, Jessie Dennis Latham, as a witness. The appellant contends that the circuit court erred by refusing to allow evidence tending to prove that Latham was the confidential informant and that Latham lied to Agent King about seeing contraband in the appellant's desk "within the past hour," as stated in the affidavit.
Latham testified that he had been a security guard for Buccaneer Homes for seven years. He clocked in at the plant at 4:47 a.m. on the morning in question. The circuit court sustained the prosecutor's objections to the following questions asked Latham by defense counsel:
 "Who was in the plant or on the premises at four forty-seven when you went to work that morning?" R. 53.
 "On the morning of December 7 when you came to work that morning was there anybody in the plant other than you and the other guard?" R. 55.
 "Mr. Latham, did you phone or give information to law enforcement officers that morning about the contents of a desk drawer in Richard Franks' office?" R. 58-59. *Page 1273 
 "Mr. Latham, between the time you clocked in on the morning of December 7 and until the time Mr. Franks' office was searched did you go in Mr. Franks' office and go through his desk?" R. 61.
 "Mr. Latham, did you see anyone go into Richard Franks' office on the morning of December 7, 1990 prior to the time that the search warrant was executed?" R. 63.
During the proceedings below, the appellant did not contest Agent King's truthfulness in stating that he had a confidential informant and that the informant gave him certain information. He did not contest Agent King's reason for relying on the confidential informant. The appellant disputed only the truthfulness of the information provided to Agent King by the confidential informant. The issue is therefore whether an accused should be allowed to challenge the truth of what a confidential informant has told an officer-affiant when the accused is making no challenge to the affiant's veracity or to the reasonableness of the affiant's reliance upon on the informant's report.
Franks v. Delaware, supra, did not decide that issue. TheFranks Court specifically stated that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today isonly that of the affiant, not of any nongovernmental informant." 438 U.S. at 171, 98 S.Ct. at 2684 (emphasis added).
Professor LaFave, quoting the Model Code of Pre-Arraignment Procedure 569 (1975), states the problem as follows:
 " '[S]uppose the informant tells a police officer a pack of lies, which the officer reasonably believes and accurately reports to the issuing magistrate, and the search then turns up something seizable? [Should] the movant [be able to] challenge the truth of what the informant told the officer?' "
2 W. LaFave, Search Seizure § 4.4(b) at 190 (2d ed. 1987) (brackets added by LaFave). LaFave asserts that the movantshould not be able to challenge the truth of what the informant told the officer. The author quotes from "the leading case ofTheodor v. Superior Court [, 8 Cal.3d 77, 104 Cal.Rptr. 226,501 P.2d 234 (1972)]:"
 " '[W]e conclude that only when the affiant has acted unreasonably in making factual mistakes must those errors be excised from the affidavit before testing the existence of probable cause. While undeniably misstatements impede the function of the magistrate, once it has been determined that the affiant has acted reasonably under the circumstances, little more can be required of him. To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment. * * *'
 " 'There is no reason to hold an officer to a standard of absolute accuracy in those instances in which the inference-drawing power is reserved for the magistrate who is to issue a warrant, when the officer is only required to reach a reasonable factual deduction in those instances in which he makes the inferences and acts without a warrant. In both cases, the constitutional standard is one of reasonableness.' "
2 W. LaFave at 191. LaFave concludes that
 "With the possible exception of . . . two special situations [not relevant here], this reasoning is eminently sound, and thus it is not surprising that other courts have likewise concluded that 'a defendant may not challenge the truth of hearsay evidence reported by an affiant,' but only 'any statements based on the affiant's personal knowledge, including his representation concerning the informer's reliability' and 'his representation that the hearsay statements were actually made.' . . . .
 "Theodor was addressing the situation which exists with respect to the overwhelming majority of search warrants: the affiant is a police officer, and he is *Page 1274 
reporting hearsay given to him by a private citizen. On these facts, the Theodor reasoning makes good sense."
2 W. LaFave at 191-92.
We agree with the reasoning of Professor LaFave and those courts which have addressed the precise issue (see cases collected in 2 W. LaFave, supra at 191-92 n. 34) that " 'a defendant may not challenge the truth of hearsay evidence reported by an affiant,' but only 'any statements based on the affiant's personal knowledge, including his representations concerning the informer's reliability' and 'his representation that the hearsay statements were actually made.' " 2 W. LaFave at 191 (quoting United States v. Carmichael, 489 F.2d 983, 989
(7th Cir. 1973)).
In this case, the appellant did not argue or seek to establish below, and he does not now contend on appeal that any of the affiant's statements based on the affiant's personal knowledge — including his averment about the informant's reliability and his averment that the informant reported that he had seen cocaine "within the past hour" — were false. Compare Sims v. State, 587 So.2d 1271 (Ala.Cr.App. 1991) (affiant falsely stated that informant had witnessed drug transaction, when in fact informant was relying on information from another individual), cert. denied, ___ U.S. ___,112 S.Ct. 1179, 117 L.Ed.2d 423 (1992); Moore v. State, 570 So.2d 788
(Ala.Cr.App. 1990) (affiant falsely stated that information had come directly from informant, rather than indirectly through another officer); Villemez v. State, 555 So.2d 342
(Ala.Cr.App. 1989) (same); Gray v. State, 507 So.2d 1026
(Ala.Cr.App. 1987) (affiant falsely stated that contraband was in packages, rather than in a single package, but misstatement not so material as to defeat finding of probable cause). The appellant challenged neither the existence of the informant nor the veracity of the officer-affiant. Compare United States v.Kiser, 716 F.2d 1268 (9th Cir. 1983); State v. Wolken,103 Wn.2d 823, 700 P.2d 319 (1985).
Because the appellant made no showing either that 0Agent King's statements were false, or that Agent King did not reasonably rely on the informant's report, the trial court did not err by foreclosing an inquiry into the truth or falsity of the informant's statements.
 II
The trial court did err, however, by foreclosing an inquiry into whether the informant — who must have probed into the appellant's desk in order to have seen the contraband at the time he claimed to have seen it — was acting as an agent of the State when he made that "search."
While the prohibitions of the Fourth Amendment do not apply to the conduct of private individuals, the protections of that amendment do extend to a business office, O'Connor v. Ortega,480 U.S. 709, 716-17, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714
(1987); Mancusi v. DeForte, 392 U.S. 364, 369, 88 S.Ct. 2120,2124, 20 L.Ed.2d 1154 (1968).
 "The Fourth Amendment proscribes only governmental action and does not apply to a search or seizure — even an unreasonable one — conducted by a private individual, unless that person is acting as an agent of the government or with the participation or knowledge of a governmental official. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94
(1984); Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921). Even '[a] wrongful search or seizure conducted by a private person does not violate the Fourth Amendment.' United States v. Black, 767 F.2d 1334, 1339 (9th Cir. 1985); Singleton v. State, 48 Ala. App. 157, 160, 262 So.2d 772, 775 (1971), cert. denied, 288 Ala. 751, 262 So.2d 776 (1972)."
Ex parte Hilley, 484 So.2d 485, 490 (Ala. 1985).
The State's evidence established that the confidential informant was not a one-time informer who just happened upon cocaine in the appellant's desk. The informant had given Agent King information on eight other occasions which proved to be correct. King knew the informant well enough to recognize his voice over the telephone. R. *Page 1275 
21. More importantly, King testified that he had had conversations with the informant over a period of several months "about Richard Franks" and the "suspicion that there were drugs in his office or desk." R. 21-22.
Although the appellant never established that Latham was the confidential informant in this case, the testimony elicited at the suppression hearing points strongly towards that conclusion. Latham was one of two security guards who had access to the appellant's office and who was on duty during the time in question. The appellant made an offer of proof that the other security guard disclaimed any knowledge about the facts of this case.
Latham's application for employment at Buccaneer Homes stated, under the heading "special training or qualifications," that he had "police training" and that he had "assisted the State and D.A.['s] office in drug investigation." S.R. 62. The application recited Latham's former employment positions as security guard, dispatcher and jailer, and police chief of the town of Berry, Alabama. S.R. 63. Latham listed Marion District Attorney Al Tidwell as a reference. S.R. 64. Mr. Tidwell acknowledged that he had known Latham for several years and that Latham's stepdaughter used to be his secretary. R. 94-95.
When defense counsel attempted to question Latham about his relationship with law enforcement on December 7, 1990, the circuit court restricted the defense to inquiring whether Latham had been a law enforcement "employee" on that day, limiting the definition of "employee" to one "receiving pay for any services rendered." R. 60. Latham denied that he was an employee under that definition. Id.
The trial court sustained the State's objections to each of the following questions defense counsel asked Latham:
 "When did you assist the state and the D.A.['s] office in drug investigations?" R. 50.
 "Were you performing any work or any duties, any tasks for [the police, the State, or any law enforcement agency on December 7, 1990?]" R. 59.
 "Prior to December 7, 1990, were you giving information to the police, drug unit or any other enforcement agency?" R. 60.
 "Did I have my information right that you are and were training police dogs to sniff out drugs?" R. 61.
 "Mr. Latham, were you on that occasion or at any time prior thereto working as an agent of the police, the drug unit or any law enforcement agency?" R. 62.
 "Mr. Latham, were you on December 7 or immediately prior thereto working under the direction, receiving directions from the police or any other law enforcement agency with respect to ferreting out drugs?" R. 62.
 "Were you on December 7, 1990 or immediately prior thereto acting with an intent to assist police, the drug unit or other law enforcement agencies in their investigation of drugs?" R. 63.
 "After you clocked in at four forty-[seven] that morning, . . . did you leave the plant the morning of December 7?" R. 58.
The appellant made an offer of proof that
 "after Mr. Dennis Latham clocked in that he left the plant there in the neighborhood of five o'clock or so that morning, that he went — that he told [another employee, Frank Dickey] that he had a meeting with the sheriff and some other law enforcement officers and that this occurred prior to six or six thirty when, apparently when Agent King received his information from his confidential informant." R. 81-82.
The circuit court would not allow the appellant to call Marion County Sheriff Max Brasher to question him about a meeting with Latham. R. 98-99.
Rule 15.6(c), A.R.Crim.P., requires that at a hearing on a motion to suppress, "[t]he judge shall receive evidence on any issue of fact necessary to the determination of the motion." In light of the appellant's showing that Latham had a law enforcement background, that he had previously participated in drug investigations, and that he very probably was the confidential *Page 1276 
informant, the appellant was entitled to present evidence on the issue of the State's involvement in the informant's search of the appellant's desk.
Law enforcement involvement in what would otherwise be deemed a private search can be found on facts other than pay for services rendered. See generally 1 W. LaFave Search Seizure
§ 1.8 (2d ed. 1987). Therefore, the circuit court unduly restricted the appellant to inquiring whether Latham was a law enforcement "employee." Government participation in a private search can also be found on police "encouragement," which falls short of a specific request or directive to a private person to make the search. Id. Thus, Agent King's testimony that he did not "ask [the confidential informant] to go in [to the appellant's office] and look [for drugs]," R. 30, is not dispositive. The correct standard is stated in Ex parte Hilley:
 "Mere antecedent contact between [the informant who performs a 'search'] and the police d[oes] not make [the informant] an agent of the police. United States v. Lambert, 771 F.2d 83, 89 (6th Cir.) [, cert. denied, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985)]; United States v. Coleman, 628 F.2d 961, 965 (6th Cir. 1980). Rather, to make a person an agent of the police in this context, two facts must be shown.
 "First, the police must have instigated, encouraged, or participated in the search. Second, the individual must have engaged in the search with the intent of assisting the police in their investigation. Lambert, 771 F.2d at 89; [United States v.] Black, 767 F.2d [1334] at 1339 [(9th Cir.), cert. denied, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985)]; United States v. Howard, 752 F.2d 220, 227 (6th Cir. 1985)."
Ex parte Hilley, 484 So.2d at 490.
On remand, we direct the circuit court to order the District Attorney to reveal to the appellant whether or not Jessie Dennis Latham was the confidential informant in this case. In the event the circuit court determines that Latham was the informant, we further direct that court to hold a new hearing on the appellant's motion to suppress. At that hearing, the appellant shall be allowed to inquire into the circumstances surrounding Latham's search of the appellant's desk in order to determine (1) the extent of law enforcement encouragement or participation in Latham's search, and (2) Latham's motivation for the search. The trial court shall make findings of fact and conclusions of law on each material issue.
The trial court shall take the necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 60 days of the release of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.