[No. A096508. First Dist., Div. Two. Jan. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
WILFRED CARL VALTAKIS, Defendant and Appellant.

## COUNSEL

Bruce S. Wiener, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LAMBDEN, J.**—We hold that a defendant's failure to object at sentencing to noncompliance with the probation fee procedures of Penal Code section 1203.1b[1] waives the claim on appeal, consistent with the general waiver rules of *People v. Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*) and *People v. Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*).

### BACKGROUND

Wilfred Carl Valtakis entered a negotiated plea of no contest to one count of LSD possession for sale (Health & Saf. Code, § 11378) in return for dismissal of a second felony count (*id.*, § 11377, subd. (a)) with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d

---

[1]All undesignated section references are to the Penal Code.

396]), dismissal of a second case, and probation. The plea entry form included a provision, initialed by Valtakis, acknowledging, "In addition to other penalties that may be ordered by the Court, I will be subjected to fines that may vary in amount from $10.00 to $20,000.00." The hearing was held on August 7, 2001, and sentencing was continued to October 2 to allow for a probation interview and report.

The report recommended a restitution fine of $200 (Pen. Code, § 1202.4), a drug lab fee of $50 (Health & Saf. Code, § 11372.5), and a probation fee of $250 (Pen. Code, § 1203.1). The report contained no determination of ability to pay and no advisement of a right to a separate hearing on that issue. It noted in the offense summary, however, that Valtakis had $255 in cash on him, plus 209 "hits" of LSD and three vials of liquid LSD, when his residence was searched. It also recited, as "collateral information," that Valtakis said he had not regularly used LSD himself but supplied it to friends, that he had since moved to Susanville with his mother, who worked as a correctional officer for the California Department of Corrections, and that he was attending Lassen Community College in an effort to obtain a certificate in steam power operations.

At sentencing, the 22-year-old Valtakis represented to the court, through counsel, that he remained enrolled in college, had "straightened out his life substantially" since the offense, was working part-time for the H. L. Power Company, and had gotten "excellent recommendations" from the college and the company.

The court, having considered the report and comments of counsel, suspended imposition of sentence and placed Valtakis on three years' probation conditioned on his serving 180 days in jail (stayed until January 2002 to allow completion of his school semester), seeking or maintaining full-time employment and/or educational training, and paying fees of $135 (Health & Saf. Code, § 11372.5) and $405 (*id.*, § 11372.7). Valtakis was also ordered to pay the costs of any drug or alcohol testing, to provide any financial information requested by probation and, although "not part of his probationary grant," to pay a probation service fee of $250.

Neither Valtakis nor his trial counsel objected to any of the fees below. On this appeal, Valtakis assails the probation fee of $250 as imposed without compliance with section 1203.1b, and he asks that we strike it. The People urge that any noncompliance is waived for purposes of appeal by the failure to object below and that the record supports his ability to pay the one-time fee in any event. We hold that noncompliance is waived.

## DISCUSSION

Section 1203.1, subdivision (a), authorizes a court to impose fines when it suspends the imposition or execution of sentence and grants probation, and section 1203.1b specifically authorizes the recoupment of certain costs incurred for probation and the preparation of preplea or presentence investigations and reports on the defendant's amenability to probation. As amended by 1995 legislation (Stats. 1995, ch. 36, § 1, pp. 109-110), the section requires determinations of amount and ability to pay, first by the probation officer, and, unless the defendant makes "a knowing and intelligent waiver" after notice of the right from the probation officer, a separate evidentiary hearing and determination of those questions by the court.[2]

 Valtakis notes that while the probation officer in this case recommended in the presentencing report that a $250 fee be imposed, the officer

---

[2]Section 1203.1b currently provides in part, with no significant change from the 1995 version in force at sentencing: "(a) In any case in which a defendant is convicted of an offense and is the subject of any preplea or presentence investigation and report, whether or not probation supervision is ordered by the court, and in any case in which a defendant is granted probation or given a conditional sentence, the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision or a conditional sentence, of conducting any preplea investigation and preparing any preplea report pursuant to Section 1203.7, of conducting any presentence investigation and preparing any presentence report made pursuant to Section 1203, and of processing a jurisdictional transfer pursuant to Section 1203.9 or of processing a request for interstate compact supervision pursuant to Sections 11175 to 11179, inclusive, whichever applies. The reasonable cost of these services and of probation supervision or a conditional sentence shall not exceed the amount determined to be the actual average cost thereof. . . . The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver.

"(b) When the defendant fails to waive the right provided in subdivision (a) to a determination by the court of his or her ability to pay and the payment amount, the probation officer shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made. The court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer, or his or her authorized representative. The following shall apply to a hearing conducted pursuant to this subdivision:

"(1) At the hearing, the defendant shall be entitled to have, but shall not be limited to, the opportunity to be heard in person, to present witnesses and other documentary evidence, and to confront and cross-examine adverse witnesses, and to disclosure of the evidence against the

made no express finding of ability to pay and gave no notice of the right to a separate hearing by the court; further, the court did not hold a separate hearing or make its own determinations. Finally, he urges, the lack of notice of his right to a court determination forecloses any finding of a knowing and intelligent waiver of the right. Thus he urges that the fee was "wrongfully imposed" and "should be stricken from the probation order."

Valtakis relies solely on the statutory requirements. Thus, for example, while he complains of having no statutory notice of his right to a court determination, he does not complain that he lacked due process notice, and with the fee and amount specified in the report in advance of sentencing, this would be a very difficult argument to make (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84 [53 Cal.Rptr.2d 557]).[3]

Is the statutory claim waived on appeal for failure to object anytime below? Settled case law precedent indicates that it is. In its 1993 decision in *Welch*, our Supreme Court overruled contrary precedent to hold that conditions of probation, unless objected to when imposed at sentencing, cannot be later challenged on appeal (*Welch, supra*, 5 Cal.4th at pp. 232-237), and

defendant, and a written statement of the findings of the court or the probation officer, or his or her authorized representative.

"(2) At the hearing, if the court determines that the defendant has the ability to pay all or part of the costs, the court shall set the amount to be reimbursed and order the defendant to pay that sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability.

"(3) At the hearing, in making a determination of whether a defendant has the ability to pay, the court shall take into account the amount of any fine imposed upon the defendant and any amount the defendant has been ordered to pay in restitution.

"(4) When the court determines that the defendant's ability to pay is different from the determination of the probation officer, the court shall state on the record the reason for its order.

"(c) The court may hold additional hearings during the probationary or conditional sentence period to review the defendant's financial ability to pay the amount, and in the manner, as set by the probation officer, or his or her authorized representative, or as set by the court pursuant to this section. [¶] . . . [¶]

"(f) At any time during the pendency of the judgment rendered according to the terms of this section, a defendant against whom a judgment has been rendered may petition the probation officer for a review of the defendant's financial ability to pay or the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to the defendant's ability to pay the judgment. The probation officer and the court shall advise the defendant of this right at the time of rendering of the terms of probation or the judgment.

"(g) All sums paid by a defendant pursuant to this section shall be allocated for the operating expenses of the county probation department."

[3]This is not to suggest that a due process notice claim, as distinct from a statutory one, could be raised for the first time on appeal. (See, e.g., *People v. Birmingham* (1990) 217 Cal.App.3d 180, 183 [265 Cal.Rptr. 780] [statutory notice and due process notice claims waived by failure to object].)

cases building on *Welch* have uniformly held that defendants likewise cannot complain for the first time on appeal of restitution fines imposed without findings or evidence of ability to pay (*People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469 [33 Cal.Rptr.2d 217]; *People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1394-1395 [44 Cal.Rptr.2d 501]), even when characterized as unauthorized due to legal error (*People v. Forshay* (1995) 39 Cal.App.4th 686, 689-690 [46 Cal.Rptr.2d 116]; *People v. Gillard* (1997) 57 Cal.App.4th 136, 165, fn. 18 [66 Cal.Rptr.2d 790]).

The same holds true as a more general principle of sentencing under the 1994 decision in *Scott*, which held that a defendant's failure to object waives claims of error in the exercise of sentencing discretion and statement of reasons required by statute and rule (*Scott, supra,* 9 Cal.4th at pp. 351-356). ■ *Scott* clarified what claims may be beyond the waiver rule as *unauthorized*: "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Id.* at p. 354.) ■ That is not the case here, for a probation fee *could* have been lawfully imposed had an ability to pay appeared, a clearly fact-bound determination. "In essence, claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner" (*ibid.*), which is exactly the claim here: the probation fees, otherwise permitted, were procedurally flawed (for absence of notice, a hearing or a finding) and factually flawed (for absence of evidence that the defendant had the ability to pay). The unauthorized-sentence exception does not apply. (Cf. *People v. Middleton* (1997) 52 Cal.App.4th 19, 37 [60 Cal.Rptr.2d 366].)

Recently, our Supreme Court applied the waiver doctrine of *Welch* and *Scott* to hold that the People, no less than defendants, are barred from seeking correction of a sentence for the first time on appeal—notably, omissions of mandatory restitution fines (§§ 1202.4, 1202.45)—where they have failed to object at sentencing. (*People v. Tillman* (2000) 22 Cal.4th 300, 302-303 [92 Cal.Rptr.2d 741, 992 P.2d 1109] (*Tillman*).) This is consistent with prior precedent that a defendant seeking to set aside a plea for failure to advise him or her of restitution fine consequences waives any such claim on appeal unless he or she *objected at or before sentencing* and can show prejudice. (*People v. Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861].)

That precedent compels the conclusion that failure to object in the trial court to statutory error in the imposition of a probation fee under section 1203.1b waives the matter for purposes of appeal.

For his contrary view, Valtakis cites the statutory language that "[t]he probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount," and that "[t]he defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver." (§ 1203.1b, subd. (a); fn. 2, *ante*.) Without notice, he reasons, one cannot intelligently waive the right and therefore must be able to assert it for the first time on appeal. We disagree. The last quoted sentence, standing alone, is arguably ambiguous enough to allow his interpretation, for it might refer to waiver in the trial court or might also encompass waiver on appeal. But, observing our duty to avoid an absurd construction whenever possible (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134]), we read the language as pertaining to waiver in the trial court, not on appeal.

To put the matter in context, the section concerns recoupment of probation-related assessment and supervision costs (see fn. 2, *ante*) and mandates that all sums paid by a defendant "be allocated for the operating expenses of the county probation department" (§ 1203.1b, subd. (g)). ■ "Section 1203.1b and other recoupment statutes reflect a strong legislative policy in favor of shifting the costs stemming from criminal acts back to the convicted defendant" and " ' "replenishing a county treasury from the pockets of those who have directly benefited from county expenditures." ' " (*People v. Phillips* (1994) 25 Cal.App.4th 62, 69 [30 Cal.Rptr.2d 321] (*Phillips*).) In an "age of expanding criminal dockets and the resulting heightened burden on public revenues[,] [r]ecoupment laws reflect legislative efforts to recover some of these added costs and conserve the public fisc." (*Id.* at pp. 69-70.)

■ Before the 1995 amendments, section 1203.1b contained no language specifying a right to a separate hearing or requiring notice of that right and a waiver that is voluntary and intelligent, and the pre-amendment version was the one examined in the May 1994 decision of *Phillips*. (*Phillips, supra*, 25 Cal.App.4th at p. 67; Stats. 1989, ch. 1059, § 1, pp. 3666-3667.) The defendant there argued that a costs order was invalid because the court had failed to give him a *separate* hearing on his ability to pay, instead combining the matter with others at sentencing. *Phillips* disagreed: "Looking at the language of former section 1203.1b, we see that the statute makes no specific reference to a separate hearing, nor does it contain any language compelling the conclusion that the ability-to-pay hearing may not be conducted as part of the sentencing process. Secondly, although the statute indicates that a defendant is entitled to various procedural rights at the hearing, this cannot be read as excluding a more informal procedure with a

defendant's acquiescence." (*Phillips, supra,* at p. 69.) The court then cited the policy of conserving the public fisc and held: "[T]he language of section 1203.1b, considered in light of the section's clear legislative policy of conserving public funds, leads us to the conclusion that although section 1203.1b permits a separate hearing on a defendant's ability to pay probation costs, the statute does not prohibit a sentencing court from conducting the hearing as part of the sentencing process. [Citations.] [¶] Similarly, the statute does not require a hearing at which evidence is formally presented if a defendant is amenable to an informal proceeding. On this latter point, we note that defendant does not claim he lacked notice of the time and place of the section 1203.1b hearing, nor did defendant voice any objection to the manner in which the hearing was conducted. Accordingly, we deem any objection to the lack of a formal hearing to be waived. . . ." (*Id.* at p. 70.)

The parties cite no legislative history, but we may safely assume that the 1995 amendment's addition of separate-hearing and waiver language was a legislative response to *Phillips.* The right to a separate hearing by the court was made explicit, with provision for an initial determination to be made by the probation officer, and loss of the right to a court determination was made to depend on a knowing and intelligent waiver on the part of the defendant. By having the probation officer inform the defendant of that right, the Legislature tried to ensure that a waiver would be knowing and intelligent. All of this is cast in mandatory language and clearly creates an antiwaiver rule at the trial court level. Here, for example, unless Valtakis had made an informed waiver, in connection with his plea change or later, he was entitled to a separate court determination at an evidentiary hearing, most likely sometime before the sentencing hearing (but see § 1203.1b, subd. (c) [authorizing the court to hold additional hearings during the probationary or conditional sentence period to review ability to pay and the fee amount]).[4]

---

[4]Our own perusal of legislative materials for the source bill (Assem. Bill No. 594 (1995-1996 Reg. Sess.)) unearths no direct reference to *Phillips, supra,* 25 Cal.App.4th 62, but an indirect reference to *Phillips*'s holding on acquiescence might be discerned in this Legislative Counsel's Digest summary of existing law: "(1) Existing law requires the probation officer to make a recommendation to the court of the defendant's ability to pay all or a portion of the reasonable cost of various activities . . . . Existing law specifies procedures in which, if the defendant agrees with the recommendation, the probation officer forwards the recommendation to the court for affirmation and a corresponding court order or, if the defendant does not agree, the court conducts a hearing. [¶] This bill would recast this provision to require the probation officer to make a determination of the defendant's ability to pay the above-described costs. The bill would provide that the defendant is entitled to a court hearing, that includes the right to counsel, to determine the amount of payment and the manner in which the payments shall be made. The bill would specify that this right can only be waived by a knowing and intelligent waiver." (Legis. Counsel's Dig., Assem. Bill No. 594 (1995-1996 Reg. Sess.) 5 Stats. 1995, Summary Dig., pp. 11-12.) Like the resulting legislation, the digest summary makes no reference to waiver on appeal.

But what is the intended effect, if any, on the usual appellate rule that a claim is waived if not raised in the proceedings below? Did the Legislature intend, as Valtakis supposes, that a defendant and his counsel may stand silent as the court imposes a fee—even a nominal one like the $250 here—and then complain for the first time on appeal that some aspect of the statutory procedure was not followed? We say no.

First, to the extent the amendments were a response to *Phillips,* then we have no reason to think that the antiwaiver language was designed to abrogate the rules of *Welch, supra,* 5 Cal.4th 228, and *Scott, supra,* 9 Cal.4th 331. *Phillips* did not use the lack of objection as a procedural bar on appeal; rather, it used it to stress that the defendant had acquiesced in the trial court holding a *combined* ability-to-pay and sentencing hearing: "[D]efendant does not claim he lacked notice of the time and place of the section 1203.1b hearing, nor did defendant voice any objection to the *manner* in which the hearing was conducted." (*Phillips, supra,* 25 Cal.App.4th at p. 70, italics added.) This showed record support for an absence of error under a conclusion that the statute did not "require a hearing at which evidence is formally presented if a defendant is amenable to an informal proceeding." (*Ibid.*) The issue was not so much waiver as acquiescence, and viewed in that light, the 1995 amending language appears designed to clarify that such acquiescence must now occur actively, not passively, and upon a knowing and intelligent waiver.

Second, the waiver language does not speak to appellate review. The context involves trial court procedures (fn. 2, *ante*), and the Legislature was presumably aware of the long-established principles exemplified in *Welch* and *Scott* (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155 [278 Cal.Rptr. 614, 805 P.2d 873]) and that defendants, unless exercising their right to self-representation, enjoy the assistance of counsel, counsel who are familiar with the need to preserve claims of error by objection. ■■■ "[I]t should not 'be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.'" (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234].)

■■■ Third, to construe the language as abrogating *Welch* and *Scott* (and now *Tillman, supra,* 22 Cal.4th 300) would work results horribly at odds with the overarching cost conservation policy of the section. ■■■ "Statutes should be construed to produce a reasonable result consistent with the legislative purpose. [Citation.] The object to be achieved and the evil to be prevented are prime considerations in determining legislative

intent." (*People v. Jeffers* (1987) 43 Cal.3d 984, 997 [239 Cal.Rptr. 886, 741 P.2d 1127].) If needed to avoid absurd consequences, the intent of an enactment prevails over the letter and the letter will, if possible, be read so as to conform to the spirit of the act. (*People v. Broussard, supra,* 5 Cal.4th at p. 1071.) Here the antiwaiver language that helps shield defendants against fees beyond their ability to pay subserves a greater purpose of conserving the public fisc (*Phillips, supra,* 25 Cal.App.4th at p. 70; *People v. Amor* (1974) 12 Cal.3d 20, 27 [114 Cal.Rptr. 765, 523 P.2d 1173] [recoupment of counsel costs]), a purpose that would be sacrificed if we adopted Valtakis's reading. Criminal defendants often lack the means to pay high recoupment fees, and so the amounts imposed are relatively modest in most of the cases we see. To allow a defendant and his counsel to stand silently by as the court imposes a $250 fee, as here, and then contest this for the first time on an appeal that drains the public fisc of many thousands of dollars in court and appointed counsel costs, would be hideously counterproductive. It would also be completely unnecessary, for the Legislature has provided mechanisms in section 1203.1b for adjusting fees and reevaluating ability to pay *without an appeal* anytime during the probationary period (§ 1203.1b, subd. (c)) or the pendency of any judgment (*id.,* subd. (f); fn. 2, *ante*).

Valtakis's failure to object to the fee below has waived the claim on appeal. Alternatively, if we could reach his claim, we would have to hold that there is no evident prejudice to justify a reversal of the fee or remand to hear the matter. This being a claim of state law error, we could not reverse unless we found a reasonable probability that, but for the error, the result would have been more favorable. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.) The record does not suggest that Valtakis was unable to pay the $250 or that the result of a remand would be a better one. The record shows that he had $255 on him when arrested and, by the time of sentencing, was working part-time, was not addicted to drugs or otherwise incapacitated, was living with his mother (herself employed), and was given a three-month stay of his jail term in order to complete his current school semester. It appears highly unlikely that a remand to assess his financial circumstances at the time of the sentencing would show him to have been unable to pay the $250, even considering the $540 in other fees also imposed.

As already intimated, if his situation has changed *since* the fee was imposed, his remedy is not through this appeal but through the statute itself, which allows "additional hearings" on his ability to pay anytime during the probationary period (§ 1203.1b, subd. (c)) and modification of a judgment anytime upon showing a "change of circumstances" (*id.,* subd. (f); fn. 2, *ante*).

## DISPOSITION

The judgment (order) is affirmed.

Kline, P. J., and Haerle, J., concurred.