Filed 12/16/13 In re Mark R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MARK R., a Person Coming Under the Juvenile Court Law. | B244602 |
| | (Los Angeles County Super. Ct. No. MJ20717) |
| THE PEOPLE, Plaintiff and Respondent, v. MARK R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakaki, Judge. Affirmed in part; reversed in part and remanded.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Mark R. was declared a ward of the juvenile court and ordered to pay $14,443.03 in restitution to the City of Lancaster after admitting he had committed two counts of graffiti vandalism with damage of $400 or more. On appeal Mark contends he received inadequate notice of the amount of restitution being sought, the restitution award was not properly calculated and the juvenile court abused its discretion in determining he had the ability to pay the restitution award. We conclude the restitution award was improper to the extent it required Mark to reimburse the City for economic losses that did not reflect its actual cost of removing Mark's graffiti.[1] Accordingly, we reverse in part and remand for further proceedings.

## FACTUAL AND PROCEDURL BACKGROUND

1. *The Incidents of Vandalism and Delinquency Petitions*

According to the probation report, Mark, then 15 years old, entered a vacant house owned by the City with three companions and dumped a bucket of paint on the fireplace, carpet and walls of various rooms. On different occasions Mark also "tagged" (spray painted graffiti) various items of public property.

On June 12, 2011 two petitions were filed pursuant to Welfare and Institutions Code section 602[2] charging Mark with acts of vandalism against the City resulting in damage of $400 or more (Pen. Code, § 594, subd. (a)). The first petition alleged between March 17 and 24, 2011 Mark had defaced with graffiti a house owned by the City causing damage to a block wall, exterior stucco, patio door, screen door, interior and entry door, carpet, light fixtures, fireplace and window screens (count 1) and windows and dry wall (count 2). The second petition alleged between February 1 and February 22,

---

[1]     The California Supreme Court has granted review in a similar case from this court in which we also invalidated a restitution award to the City of Lancaster using its restitution model. (*Luis M. v. Superior Court* (2012) 210 Cal.App.4th 982, review granted Feb. 13, 2013, S207314.)

[2]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

2011 Mark had defaced with graffiti an electric box (counts 1, 3-5), a sign (count 2), a wall (count 6) and a trash container (count 7).

2. *The Admissions and Disposition*

Mark admitted the first count of each petition, and the remaining counts were dismissed pursuant to a negotiated agreement. Mark also agreed to a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754), allowing the court to consider the dismissed counts in setting the amount of restitution. The court ordered Mark to remain a ward of the court, declared the offenses felonies, ordered Mark home on probation and scheduled a restitution hearing.

3. *The Restitution Hearing*

At the restitution hearing the People sought $14,874.35 in victim restitution on behalf of the City. In support of their claim the People introduced a series of photographs depicting the damage alleged in both petitions and two reports detailing the costs to the City resulting from Mark's graffiti vandalism. The first report, prepared by Brian Schaumburg of Boardwalk Contractors, Inc., estimated $11,855.11 in repair and replacement costs for damage to the house as alleged in the first petition.

The second report, prepared by Marleen Navarro, crime prevention officer for the City, estimated $3,019.24 in repair and replacement costs for damage to the seven items of public property as alleged in the second petition. In a cover letter accompanying her report, Navarro stated she had computed the $3,019.24 in restitution by multiplying $431.32 (the City's average cost per incident of graffiti removal) by seven (the number of graffiti incidents committed by Mark). The average cost of $431.42 per incident was based upon a restitution model of the total average cost to the City of graffiti abatement in 2006, which was included in Navarro's report. The restitution model consisted of calculations of the individualized costs for (1) maintenance workers and law enforcement; (2) vehicles and graffiti cleanup equipment; (3) paint and cleaning supplies; (4) contract services for tracking graffiti; (5) and traffic control and risk management costs. The sum of these costs was $1,380,208 in 2006; the number of calls for graffiti

removal that year was 3,200; the average cost per incident of graffiti removal, therefore, was $431.42.

Mark's counsel objected to the reports as inadmissible hearsay and argued they lacked foundation because they had not been properly authenticated.  The objections were overruled, and the reports were admitted into evidence.  There was no testimony or other evidence introduced by the People or Mark.

Following argument by counsel, the court concluded the total victim restitution owed to the City was $14,443.03, consisting of $11,855.11 for damage to the house and $2,587.92 for damage to six other items of public property.[3]

## DISCUSSION

### 1. *Mark's Challenge to the Adequacy of Notice Has Been Forfeited*

Mark contends he was not given proper notice of the City's claim of $14,874.35 in restitution, explaining the probation report had estimated only $3,100 in repair costs for the house and $3,019.24 for the seven items of public property.

To preserve an issue for review on appeal, a defendant must interpose a specific and timely objection in the trial court on the same ground he asserts on appeal.  (*People v. Partida* (2005) 37 Cal.4th 428, 434.)  This general rule of forfeiture applies "'to claims based on statutory violations, as well as claims based on fundamental constitutional rights.'"  (*People v. Romero* (2008) 44 Cal.4th 386, 411.)  Because Mark did not object at the restitution hearing that there was inadequate notice of the amount of restitution claimed by the City, he has forfeited this issue on appeal.  (See *People v. Fortune* (2005) 129 Cal.App.4th 790, 793-794; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1071, fn. 3.)

---

[3]     Based on an independent review of the photographs, the juvenile court concluded it was unlikely Mark had been responsible for one of the tagging incidents alleged in the second petition.

2. *The Juvenile Court Did Not Abuse Its Discretion in Ordering $11,855.11 in Restitution for Graffiti Damage to the Vacant House*

Section 730.6 authorizes the juvenile court to award direct restitution from a minor to his or her victims for any economic loss suffered as a result of the minor's conduct. (§ 730.6, subd. (a)(2)(B).)

We review a restitution order for abuse of discretion. (*In re Dina V.* (2007) 151 Cal.App.4th 486, 490.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. '"[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt."'" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) The juvenile court is entitled to consider the probation report, and even a victim's mere statement of loss included in a probation report is sufficient to establish prima facie evidence of loss. (*Id.* at p. 1543.) "Once the victim makes a prima facie showing of economic losses incurred as a result of . . . criminal acts, the burden shifts to the [minor] to disprove the amount of losses claimed by the victim." (*Ibid.*)

The juvenile court acted within its discretion in ordering victim restitution in the sum of $11,855.11 to the City for the repair and replacement cost of the damage to the house. The court properly based its award on Schaumburg's report, which itemized the damage to the interior and exterior of the house, the amount of time and labor it would take to repair the damage or to secure replacements, and the accompanying costs. This evidence was reliable and, although hearsay, admissible at the disposition phase of a delinquency proceeding. (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 243.)

Although Mark argues on appeal that several items in Schaumburg's report appear to involve the cost of repairs to the house based on damage caused by the misconduct of his confederates who vandalized the property with him (for example, smoke damage), rather than his own acts of graffiti, he did not challenge any aspect of the restitution claim on this ground in the juvenile court. Moreover, "That a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution improper." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1209.) "California courts have

5

long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction. . . . [R]estitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]. There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

3. *The Award Based on the City's Restitution Model Was Improper*

Section 730.6, subdivision (h)(1), provides a restitution award must be in an amount "sufficient to fully reimburse the victim . . . for all determined economic losses incurred as the result of the minor's conduct." When the minor's conduct causes property damage, that amount is "the actual cost of repairing the property when repair is possible." (*Ibid*.) This includes both the cost of the materials used in the cleanup and repair and the labor cost for public works personnel who clean up the graffiti. (See, e.g., *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131, 1134.)

Several aspects of the City's restitution model are improper in the absence of evidence that these items were actual economic losses suffered as a result of Mark's vandalism (as opposed to generalized costs associated with vandalism endured in the aggregate by the City during 2006). In particular, there is no basis in the record before us for including in an award against Mark under section 730.6 costs associated with maintaining vehicles for graffiti abatement, contract services for tracking graffiti or traffic control and risk management costs. Accordingly, ordering restitution based on this restitution model was an abuse of discretion.

4. *The Court Properly Did Not Consider Mark's Ability To Pay Restitution*

Mark contends the juvenile court abused its discretion in failing to determine he had the ability to pay restitution. However, with respect to a victim restitution order (in contrast to a restitution fine), full restitution is required in the absence of compelling or

6

extraordinary reasons, and a minor's inability to pay is not to be considered by the court in determining the amount of restitution.  (§ 730.6, subd. (h).)  Accordingly, the court did not abuse its discretion in fixing the amount of restitution for losses arising out of Mark's criminal conduct without regard for his ability to pay.

## DISPOSITION

The order that Mark pay to the City $11,855.11 in victim restitution for repairs to the vacant house is affirmed.  The order that Mark pay $2,587.92 in victim restitution for cleanup and repair of the other public property items is reversed and the cause remanded for a new restitution hearing to determine the amount of restitution to be awarded for those items in a manner consistent with the views expressed in this opinion.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.