Filed 10/2/14  P. v. Nunez-Aguilar CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALFREDO NUNEZ-AGUILAR,<br><br>        Defendant and Appellant. | A139658<br><br>(Mendocino County Super. Ct.<br>No. SCUK-CRCR-12-70360-02) |

Alfredo Nunez-Aguilar entered a negotiated plea of no contest to one count of marijuana cultivation (Health & Saf. Code, § 11358) and was placed on probation.  On appeal, Nunez-Aguilar contests the trial court's imposition, pursuant to Penal Code section 1203.1b,[1] of a presentence probation report fee, a probation supervision fee, and an installment payment collection fee.  We conclude that Nunez-Aguilar forfeited the argument because he did not object to imposition of these fees below.  Accordingly, we affirm.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**[2]

On October 18, 2012, several police agents conducted a search of Nunez-Aguilar's property.  Outside the home the officers found 35 marijuana plants, and a few previously harvested plants.  In the garage, the officers found 150 pounds of hanging, untrimmed marijuana plants.  An additional 16 pounds of loose trimmed bud marijuana was located

_____

[1] Undesignated statutory references are to the Penal Code.

[2] The facts are taken from the probation report.

1

on drying racks and in other containers. The officers also found a loaded revolver, a semi-automatic handgun, a digital scale, a calculator, and $500.

Nunez-Aguilar was charged, by information, with possession of marijuana for sale (Health & Saf. Code, § 11359; count one). The information also alleged that Nunez-Aguilar was armed with a firearm in the commission of the above offense (former § 12022, subd. (a)(1)). The information was later amended to charge Nunez-Aguilar with a lesser related offense of marijuana cultivation (Health & Saf. Code, § 11358; count two).

In exchange for dismissal of count one and the firearm allegation, Nunez-Aguilar entered a plea of nolo contendere to count two. The trial court explained the potential sentence and that, among other consequences, Nunez-Aguilar could be required to pay fines that would not exceed $20,000. Nunez-Aguilar agreed to proceed and enter his no contest plea. Nunez-Aguilar also agreed he had enough time to discuss the matter with his attorney and the attorney had answered all his questions. Nunez-Aguilar's counsel joined in the plea, which the trial court accepted.

In advance of sentencing, a probation report was prepared that recommended Nunez-Aguilar pay a $652 presentence investigation fee and $81 per month in supervision fees. A proposed order of probation indicated that, if probation fees are paid in installments, Nunez-Aguilar would be subject to a $75 installment payment collection fee. The probation report also included information regarding Nunez-Aguilar's financial status and indicated that he "has been steadily employed for the past ten years," most recently as a supervisor at a lumber company. However, the report contained no express determination of ability to pay and no advisement of a right to a hearing on that issue.

At sentencing, Nunez-Aguilar's trial counsel was specifically asked if he had any concerns with the probation recommendations. Nunez-Aguilar's trial counsel objected only to a recommendation that Nunez-Aguilar be required to participate in a substance abuse treatment program. Trial counsel said he had no further comments on the probation report and that he thought "it's a rather well done report. I have no real dispute with any of it." Before finally submitting the matter, Nunez-Aguilar's counsel said, "I

2

wonder if the Court can waive the $570 drug program fund fee . . . [because] the family's finances are not strong."

The trial court suspended imposition of sentence and placed Nunez-Aguilar on three years' probation conditioned on his serving 150 days in county jail. The court struck the drug program fund fee, but ordered Nunez-Aguilar to pay, among other fines and fees, a $652 presentence investigation report fee, a probation supervision fee of $81 per month, and a $75 installment payment collection fee. Nunez-Aguilar filed a timely notice of appeal, based on "[d]enial of trial continuance, exclusion of Aguilar's medical records/Prop. 215 recommendation." The trial court granted his request for a certificate of probable cause.

## II.    DISCUSSION

Nunez-Aguilar argues that the trial court erred by imposing fees for preparation of the presentence probation report, probation supervision, and installment payment collection pursuant to section 1203.1b, without making a finding of his ability to pay. He also contends that there is insufficient evidence to support any such determination.

Section 1203.1b, subdivision (a), provides in relevant part: "In any case in which a defendant is convicted of an offense and is the subject of any preplea or presentence investigation and report, whether or not probation supervision is ordered by the court, and in any case in which a defendant is granted probation or given a conditional sentence, the probation officer . . . shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision or a conditional sentence, of conducting any preplea investigation and preparing any preplea report pursuant to Section 1203.7, of conducting any presentence investigation and preparing any presentence report made pursuant to Section 1203 . . . whichever applies. . . . The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform

3

the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver."

Section 1203.1b, subdivision (b), provides: "When the defendant fails to waive the right provided in subdivision (a) to a determination by the court of his or her ability to pay and the payment amount, the probation officer shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made. The court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer, or his or her authorized representative . . . ." Section 1203.1b, subdivision (h), provides: "The board of supervisors in any county, by resolution, may establish a fee for the processing of payments made in installments to the probation department pursuant to this section, not to exceed the administrative and clerical costs of the collection of those installment payments as determined by the board of supervisors, except that the fee shall not exceed seventy-five dollars ($75)."

Nunez-Aguilar contends: "[A]t the time of the sentencing hearing . . . , the probation office had already completed its evaluation of [Nunez-Aguilar's] ability to pay pursuant to . . . section 1203.1b, subdivision (a), and included the dollar amount of the fees it had determined [Nunez-Aguilar] should pay in the proposed order of probation. At that point in the proceedings, the court was required by section 1203.1b, subdivision (a), to either make a determination of [Nunez-Aguilar]'s ability to pay the fees, or ask [Nunez-Aguilar] if he wished to 'waive the right to a determination by the court . . . by a knowing and intelligent waiver.'. . . [¶] . . . [¶] [But], the trial court erred because it failed to obtain a required waiver of its duty to make an ability to pay finding that was knowing and intelligent . . . ."

We agree with the People that Nunez-Aguilar forfeited his arguments by failing to raise them below. There is a split of authority regarding whether a defendant must object in the trial court in order to preserve a challenge to an order to pay fees under section

4

1203.1b. (Compare *People v. Snow* (2013) 219 Cal.App.4th 1148, 1151 (*Snow*) and *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1071–1076 (*Valtakis*) with *People v. Povio* (2014) 227 Cal.App.4th 1424, 1429 (*Povio*).)[3]

In *People v. McCullough* (2013) 56 Cal.4th 589 (*McCullough*), our Supreme Court recently resolved a similar conflict regarding whether a defendant who fails to object to a booking fee, imposed under Government Code section 29550.2, subdivision (a), forfeits the right to challenge it on appeal.[4] (*McCullough,* at pp. 590–591.) The court looked first to the plain language of the Government Code and concluded it was clear that "[the] defendant had the right to a determination of his ability to pay the booking fee before the court ordered payment." (*Id.* at pp. 592–593.) Nonetheless, it explained that a right of any sort " ' " 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' [Citation.]" (*Id.* at p. 593.) The court distinguished questions of law from factual issues not developed in the record below and concluded, "because a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*Id.* at p. 597.) The court expressly disapproved *People v. Pacheco* (2010) 187 Cal.App.4th 1392, in which the Sixth District Court of Appeal held that challenges to the sufficiency of the evidence to support an order for probation related costs do not need to be raised in the trial court in order to be preserved on appeal. (*McCullough,* at p. 599.)

---

[3] Our Supreme Court is currently considering the issue. (*People v. Aguilar* (2013) 219 Cal.App.4th 1094, review granted Nov. 26, 2013, S213571; *People v. Trujillo* (Aug. 22, 2013, H038316), review granted Nov. 26, 2013, S213687 [nonpub. opn.].)

[4] Government Code section 29550.2, subdivision (a), provides, in relevant part, "If the person has the ability to pay, a judgment of conviction shall contain an order for payment of the amount of the criminal justice administration fee by the convicted person . . . ."

5

Nunez-Aguilar attempts to distinguish *McCullough* by pointing out that, unlike Government Code section 29550.2, section 1203.1b imposes extensive procedural guidelines.  He asserts:  "[T]he issue raised . . . here is not based on sufficiency of the evidence to support a finding of ability to pay, as in *McCullough*, but on the trial court's failure to act in compliance with the statutory requirements of . . . section 1203.1b, subdivision (a). [¶] . . . [¶] [T]he *McCullough* holding applies to statutes which do *not* expressly require the trial court to either make an ability to pay determination, or obtain a waiver of the defendant's right to such a determination, as provided in . . . section 1203.1b, subdivision (a)."

In *McCullough*, our Supreme Court noted:  "[O]ur review of other statutes where the Legislature has similarly required a court to determine if a defendant is able to pay a fee before the court may impose it supports our conclusion.  In contrast to the booking fee statutes, many of these other statutes provide procedural requirements or guidelines for the ability-to-pay determination.  Certain fee payment statutes require defendants to be apprised of their right to a hearing on ability to pay and afford them other procedural safeguards.  (See, e.g., . . . §§ 987.8, 1203.1b [payment of cost of probation supervision].) . . . Other fee payment statutes merely identify factors a court should consider in deciding whether to impose fees.  In many of these instances, the Legislature has articulated a fairly uniform set of factors that affect a defendant's ability to pay the fees in question:  the defendant's present financial position; his or her reasonably likely future financial position; and fines and fees already imposed. . . . [¶] We note these statutes because they indicate that the Legislature considers the financial burden of the booking fee to be de minimis and has interposed no procedural safeguards or guidelines for its imposition.  In this context, the rationale for forfeiture is particularly strong.  [Citations.]"  (*McCullough, supra*, 56 Cal.4th at pp. 598–599.)

Unlike the *Povio* court*,* we do not read this language in *McCullough* to suggest that only objections to booking fees are subject to forfeiture.  (*Povio, supra*, 227 Cal.App.4th at p. 1429.)  In our view, the Supreme Court was merely expressing an additional reason that forfeiture principles should apply.  Here, Nunez-Aguilar's ability to

6

pay the probation fees imposed, pursuant to section 1203.1b, is a factual issue not developed in the record below. Thus, the remainder of the *McCullough* reasoning applies. (*McCullough, supra,* 56 Cal.4th at p. 597.)

The *Snow* court extended the *McCullough* forfeiture principles to probation fees imposed under section 1203.1b. (*Snow, supra,* 219 Cal.App.4th 1148, 1151.) And, even before *McCullough* was decided, the *Valtakis* court reached a similar conclusion. (*Valtakis, supra,* 105 Cal.App.4th 1066, 1076.) In *Valtakis*, the defendant argued, as Nunez-Aguilar does here, that the trial court erred in imposing a probation fee without compliance with the procedures articulated in section 1203.1b. (*Id.* at pp. 1070–1071.) The defendant argued, "Without notice [of the right to a court determination of ability to pay], . . . one cannot intelligently waive the right and therefore must be able to assert it for the first time on appeal." (*Id.* at p. 1073.) Division Two of this court rejected the argument, noting that the unauthorized sentence exception to waiver did not apply because "a probation fee could have been lawfully imposed had an ability to pay appeared, a clearly fact-bound determination." (*Id.* at p. 1072, italics omitted.) The court held that a defendant may not "stand silent as the court imposes a fee—even a nominal one like the $250 here—and then complain for the first time on appeal that some aspect of the statutory procedure was not followed[.]" (*Id.* at p. 1075.) To allow a defendant to do so "would work results horribly at odds with the overarching cost conservation policy of the section." (*Ibid.*)

Here, the probation report and proposed order of probation recommended Nunez-Aguilar pay the $652 presentence investigation fee, the $81 per month supervision fee and, if applicable, the $75 installment payment collection fee. Nunez-Aguilar's trial counsel indicated that he had received and read the report before sentencing. Nonetheless, at sentencing, neither Nunez-Aguilar nor his trial counsel raised any objection to these fees, and there was no development of the factual "ability to pay" issue. Accordingly, Nunez-Aguilar forfeited his argument on appeal. (*McCullough, supra*, 56 Cal.4th at pp. 597–599; *Snow, supra,* 219 Cal.App.4th at p. 1151; *Valtakis, supra,* 105 Cal.App.4th at pp. 1071–1076.)

### III. DISPOSITION

The judgment is affirmed.

_____
Bruiniers, J.

We concur:

_____
Simons, Acting P. J.

_____
Needham, J.