Kline, P.J.
*821 Appellant John David Neal (appellant) appeals from a judgment convicting him of possession of a firearm by an ex-felon ( Pen. Code, § 29800, subd. (a)(1) ),[1] claiming evidence regarding firearms taken from his home by the police should have been suppressed as the fruit of an unconstitutional warrantless search. Appellant also contends that the probation supervision fee he was ordered to pay was improperly imposed by the trial court without any determination of his ability to pay it.
*822 We shall reject the first claim but find that the second is meritorious.
THE FACTS
After the jury was selected, trial was completed in a single day. Antioch Police Officer Randall Gragg was the sole witness for the People and appellant the sole defense witness.
Officer Gragg testified that on the evening of December 22, 2014, he and his field training officer, Corporal Shawn Morin, were informed by radio that a man at the Antioch Marina was acting in a possibly suicidal manner. When they arrived at the marina, Officer Gragg observed appellant talking to Antioch Police Sergeant Schnitzius. Appellant told Schnitzius he was previously in the military and had been a police officer and possessed police and military weapons at his home in Antioch. Because appellant appeared upset and fluctuated between moments of calmness and *631 frustration, he was transported to a hospital to be psychologically evaluated.[2]
Officers Gragg and Morin then went to appellant's residence to learn whether it contained the weapons appellant mentioned to the police. They arrived and were met by appellant's wife, Mimi Neal (Neal). Officer Gragg asked her whether she was aware of any firearms in the house. She told them she was and "said something to the effect of, yes, I don't want these guns in my house." Neal led the two officers to the master bedroom and asked them to look into a walk-in closet where they found six firearms: "four long guns, two rifles and two shotguns." The officers collected the firearms for safekeeping and provided Neal a property receipt.
When the officers returned to the police department, Officer Gragg conducted a check of appellant's criminal history and found he had a prior felony conviction for assault in 2006. Concluding appellant was a convicted felon in possession of firearms, Gragg contacted "evidence personnel" and advised them that the firearms taken from appellant's home were now being used for "evidentiary purposes," not for safekeeping.
Later, Officer Morin received a voicemail on a police department phone from appellant sarcastically thanking him for taking his firearms and inquiring about how he could get them back. Appellant stated that the guns belonged to him and he intended to give them as Christmas presents to his children. Officer Morin recorded the voicemail, and it was played for the jury.
Appellant testified that he went to the Antioch Marina to clear his head of concerns about family matters. Shortly after he arrived, he was approached by *823 a police officer (Sergeant Schnitzius) who asked his name and what he was doing at the pier. He spoke freely to the officer because he had nothing to hide, and told him that his father had recently died and this was the first Christmas he had spent without his father. He also stated that he just received the bulk of his father's estate and this "was just bringing up a lot of memories." When the officer asked whether he possessed a weapon or there was one in his vehicle appellant answered "no" but added that he did have weapons at home that were "part of the probate estate that had been delivered to the house after the courts had settled what they called a disposition of possession of property."
On December 23, the day after he spoke with police officers at the Marina, appellant went to the Antioch Police Department, "[p]artly to see what I needed to do next when I found out that morning that the guns had been removed from the house. Partly to vent some frustration on the following events after they were [re]moved." Appellant testified that he "was trying to retrieve my father's property to be given to family members that were coming from both out of state and out of the area to meet up for the holidays." Appellant admitted that he had not provided the information about giving the guns to other family members in the voicemail he left for Officer Morin, but he stated that he had given this information to Officer Pfeiffer, another Antioch police officer.
On cross-examination appellant admitted his prior felony conviction and the authenticity of the plea form he executed that was the basis of that conviction. However, he testified that when he signed the plea form he understood that the specific rights he lost while on probation, including the prohibition of the possession of firearms, *632 would be returned to him following his successful completion of probation, as was his right to vote.
The jury convicted appellant of the sole charge of possession of a firearm by an ex-felon, and the court suspended imposition of sentence and placed appellant on probation for three years.
The report and recommendation of the probation officer recommended that appellant be placed on probation and, among other things, also recommended that appellant pay for the cost of probation supervision as determined by the probation officer but not to exceed $75 per month. The report contains no analysis of appellant's financial ability to pay that amount.
*824 I.**
II.
The Court Erred in Imposing the Probation Supervision Fee Without First Determining His Ability to Pay
At the close of the sentencing hearing, defense counsel objected to the recommendation in the probation officer's sentencing report that appellant "pay for the cost of probation services as determined by the probation officer, not to exceed $75 per month." Defense counsel noted that appellant "is on disability. His wife is the only one who works outside the home. They support two children together and their income with their family obligations makes it so that they're in danger at this point of having their house foreclosed upon."[4] The court responded that "[t]he probation officer is the one who makes the determination. What they're asking for is that [appellant] pay for the cost of probation services as determined by the probation officer not to exceed $75 per month. So the probation officer's going to do an ability to pay analysis and that's a decision to be left to probation . That's not for the court to decide at this point." (Italics added.) As stated by the court, "somebody has to make the [probation services fee] determination, and the court doesn't have the information."
Defense counsel then objected to the probation officer making the fee determination on the ground that appellant had completed a financial assessment form at the time he was arraigned to establish that he qualified for free representation by the Public Defender's Office, and his financial situation had not improved but worsened since then due to increasing medical expenses. The court responded, "I don't think you understand my position. It's not that *825 I disagree with that because I don't. It's that it's not the court's determination. It's probation's. I'm going to defer to probation to make the right decision .... [¶] I'm not going to weigh in to [appellant's] financials."
Section 1203.1b, subdivision (a), provides that where, as here, a defendant is convicted *633 of an offense and is the subject of any preplea or presentence report, "the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision," and "shall determine the amount of payment and the manner in which the payments [of a probation supervision fee] shall be made to the county, based upon the defendant's ability to pay." Further, "[t]he probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make the determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver." (§ 1203.1b, subd. (a).) Where the defendant does not waive the right to a judicial determination, the probation officer "shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made" and at that time "[t]he court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the reports of the probation officer, or his or her authorized representative." (§ 1203.1b, subd. (b).)
It appears from the record that none of these statutory requirements were met in this case.[5] Appellant was not, either prior to or at the sentencing hearing, informed by the probation officer or the court of any of the rights given him under section 1203.1b; and the court's statements suggest it may have been unaware appellant possessed those rights. Because the probation officer had not determined appellant's ability to pay a probation supervision fee or the manner in which payment of any such fee should be made, the sentencing court was unable to assess those determinations.
*826 Nor did the court provide any indication it was reserving decision on the imposition of a probation services fee, as the Attorney General argues. On the contrary, the court accepted the probation officer's recommendation that the probation department itself prescribe a fee not to exceed $75 per month,[6] explicitly stating that it was "going *634 to defer to probation to make the right decision." The Felony Order of Probation/Supervision issued by the court told appellant: "Although not a condition of Probation, you are ordered to pay the following fees: ... Probation Services as determined by Probation."
Where, as in this case, a statute posits ability to pay as a precondition of a requirement to pay a fee comparable to the one at issue here-such as the booking fee authorized by Government Code section 29550.2, subdivision (a) -the defendant has the right to a determination of his ability to pay the fee before the court may order payment. ( People v. McCullough (2013) 56 Cal.4th 589, 593, 155 Cal.Rptr.3d 365, 298 P.3d 860.) In this situation, unless waived by the defendant, it is for the court, not the probation officer, to make the final determination. Here, neither the court's order nor anything else that took place at the sentencing hearing informed appellant of his right to an adjudication after an evidentiary hearing as to the propriety of the probation officer's determinations, or indicated that those determinations would be subject to any further judicial review. Matters required by the statute to be decided by the court, in the absence of a knowing and intelligent waiver by appellant, were instead left entirely in the hands of the probation officer.
This case is materially indistinguishable from People v. Pacheco (2010) 187 Cal.App.4th 1392, 115 Cal.Rptr.3d 220, disapproved on other grounds by People v. Trujillo , supra , 60 Cal.4th at page 858, 182 Cal.Rptr.3d 143, 340 P.3d 371, which appellant primarily relies upon and the Attorney General simply ignores. The Court of Appeal concluded that "the statutory procedure provided at section 1203.1b for a *827 determination of Pacheco's ability to pay probation related costs was not followed," pointing out that "[t]here is no evidence in the record that anyone, whether the probation officer or the court, made a determination of Pacheco's ability to pay the $64 per month probation supervision fee. Nor is there any evidence that probation advised him of his right to have the court make this determination or that he waived this right." ( Pacheco , at p. 1401, 115 Cal.Rptr.3d 220.) Similarly, in People v. O'Connell (2003) 107 Cal.App.4th 1062, 1065, 132 Cal.Rptr.2d 665, the trial court ordered the defendant "to pay the reasonable costs of probation supervision." The Court of Appeal found there was "no indication that the probation department or the court made a determination of appellant's ability to pay for formal probation supervision, or that appellant was ever informed by anyone of his right to a court hearing on his ability to pay, or that appellant knowingly and intelligently waived such a hearing, as required by ... section 1203.1b. [Citation.]" ( O'Connell , at pp. 1067-1068, 132 Cal.Rptr.2d 665.) The court remanded the matter "to allow the trial court to take a knowing and intelligent waiver of a hearing from defendant or to conduct a hearing as provided in ... section 1203.1b." ( Id. at p. 1068, 132 Cal.Rptr.2d 665.)
Strict compliance with the statutorily prescribed process is warranted by the problems that may result from unjustified imposition of probation services fees. As *635 legislative and other policymakers are becoming increasingly aware, the growing use of such fees and similar forms of criminal justice debt creates a significant barrier for individuals seeking to rebuild their lives after a criminal conviction. Criminal justice debt and associated collection practices can damage credit, interfere with a defendant's commitments, such as child support obligations, restrict employment opportunities and otherwise impede reentry and rehabilitation. "What at first glance appears to be easy money for the state can carry significant hidden costs-both human and financial-for individuals, for the government, and for the community at large. ... [¶] Debt-related mandatory court appearances and probation and parole conditions leave debtors vulnerable for violations that result in a new form of debtor's prison. ... Aggressive collection tactics can disrupt employment, make it difficult to meet other obligations such as child support, and lead to financial insecurity-all of which can lead to recidivism." (Bannon et al., Criminal Justice Debt, supra, p. 5; see also, Harris, A Pound of Flesh, supra , pp. 52-52.) As observed in a recent study regarding administrative fees in juvenile proceedings in California, "Fee debt becomes a civil judgment upon assessment. If families do not pay their fees, counties refer the debt to the state Franchise Tax Board, which garnishes parents' wages and intercepts their tax refunds. Under state law, these fees are meant to help protect the fiscal integrity of counties. They are not supposed to be retributive (to punish the family), rehabilitative (to help the youth) or restorative (to repay victims)." (Selbin et al., Making Families Pay: The Harmful, Unlawful and Costly Practice of Charging Juvenile Administrative Fees in California, Berkeley Law & Pol'y Advocacy Clinic (Mar. 2017), *828 p. 1; excerpted in Resnik, VanCleave & Bell, eds., Who Pays? Fines, Fees, Bail, and the Cost of Courts , Arthur Liman Center for Public Interest Law (2018) (The California Study).) The California Study also points out that "[b]ecause Black and Latino youth are overrepresented and overpunished ... in the juvenile system, families of color bear a disproportionate burden of the fees" and the inordinate debt these families incur "correlates with a greater likelihood of recidivism, even after controlling for case characteristics and youth demographics."[7] (Id . at p. II-27.)
Finally, there is reason to believe administrative fees of the sort authorized by section 1203.1b do not serve their ostensible purpose, to defray the cost of county government. The Office of the Treasurer and Tax Collector of the City and County of San Francisco recently concluded that of all of the fees imposed by the San Francisco Superior Court in behalf of the county, "probation fees [authorized by section 1203.1b] are among the most expensive for individuals, second only to victim restitution, and result in the most long-term *636 debt of the administrative fees ... examined.[8 ] A total of $15.8 million in probation fees has been assessed in the last six years, [of which] $12 million is still uncollected." (Office of the Treasurer & Tax Collector City and County of San Francisco, The Financial Justice Project, Criminal Justice Administrative Fees: High Pain for People, Low Gain for Government, a Call to Action for California Counties (2018) p. 3.) (Executive Summary).[9] *829 III.
The portion of the order of probation requiring appellant to pay for the cost of probation services as determined by the probation officer, not to exceed $75 per month, is set aside. The case is remanded to the superior court for a determination of appellant's ability to pay all or a portion of the reasonable costs of probation supervision, the amount, if any, of such costs he shall be ordered to pay, and the terms of payment, in accordance with the provisions of section 1203.1b, and the principles articulated in this opinion.
In all other respects, the judgment is affirmed.
We concur:
Richman, J.
Stewart, J.

All further statutory references are to the Penal Code unless otherwise specified.

The parties agreed that the evaluation was to determine whether appellant should be held pursuant to section 5150 of the Welfare and Institutions Code.

See footnote *, ante .

Inexplicably, defense counsel did not also object to the recommendation in the probation officer's report that appellant "pay a probation report fee of $176 pursuant to section 1203.1b," which the court ordered appellant to pay. As will be seen, section 1203.1b, subdivision (a), requires the probation officer to " 'make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision ... and preparing any ... presentence report made pursuant to Section 1203.' " (People v. Valtakis (2003) 105 Cal.App.4th 1066, 1070-1071, fn. 2, 130 Cal.Rptr.2d 133.) For reasons set forth in Valtakis at pages 1073-1075, 130 Cal.Rptr.2d 133, and because appellant challenged imposition of the probation report fee for the first time at oral argument, we conclude that appellant has waived this claim on appeal. (See People v. Trujillo (2015) 60 Cal.4th 850, 860, 182 Cal.Rptr.3d 143, 340 P.3d 371, citing Valtakis with approval.)

Additionally, neither the probation officer nor the court advised appellant as required by subdivision (f) of section 1203.1b, which provides: "At any time during the pendency of the judgment rendered according to the terms of this section, a defendant against whom a judgment has been made may petition the probation officer for a review of the defendant's financial ability to pay or the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to the defendant's ability to pay the judgment. The probation officer and the court shall advise the defendant of this right at the time of rendering of the terms of probation or the judgment ." (§ 1203.1b, subd. (f), italics added.)

It is worth noting, as others have, the problematical nature of such a recommendation due to the probation department's self-interest in a defendant's ability to pay and the amount of the fee payment. All sums paid by a defendant pursuant to section 1203.1b "shall be allocated for the operating expenses of the county probation department." (§ 1203.1b, subd. (g).) However, a county board of supervisors may authorize installment payments of a probation supervision fee to the probation department only if the monthly fee "shall not exceed seventy-five dollars ($75)." (Id ., subd. (h).) These provisions suggest that an underbudgeted probation department may have an economic incentive to find defendants able to pay the maximum allowable monthly fee, or at least to resolve doubts about a defendant's ability to pay in favor of the imposition of a fee. As one study has observed, reliance of an aspect of the criminal justice system (such as the probation process) on judicially imposed administrative fees can "threaten the impartiality of judges and other court personnel with institutional, pecuniary incentives." (Bannon et al., Criminal Justice Debt: A Barrier to Reentry (2010) p. 30 (Criminal Justice Debt) < https://www.brennancenter.org/publication/criminal-justice-debt-barrier-reentry> [as of Nov. 30, 2018].) The political pressures on counties to raise funds from defendants to support the costs of criminal justice processing is also discussed in Harris, A Pound of Flesh: Monetary Sanctions as Punishment for the Poor, Russel Sage Foundation (2016) pp. 110-115 (A Pound of Flesh).)

Shortly after this study was published the Legislature enacted and the Governor signed Senate Bill No. 190 which repealed statutes authorizing the assessment of administrative fees in juvenile delinquency cases, such as those related to the costs of detention, legal representation, electric monitoring, probation or home supervision, and drug testing. (Welf & Inst. Code, §§ 903, 903.1, 903.15, 903.2 & 729.9.) Although the new law does not apply to offenders over the age of 21 and under the jurisdiction of the criminal court, enactment of this measure suggests our Legislature may be reconsidering the assertedly " 'strong legislative policy in favor of shifting the costs stemming from criminal acts back to the convicted defendant' and ' " 'replenishing a county treasury from the pockets of those who have directly benefitted from county expenditures.' " ' " (People v. Valtakis, supra , 105 Cal.App.4th at p. 1073, 130 Cal.Rptr.2d 133, quoting People v. Phillips (1994) 25 Cal.App.4th 62, 69, 30 Cal.Rptr.2d 321.)

A monthly probation supervision fee of $75 during a three-year probation period totals $2,700.

This study, which discusses criminal justice fee collection practices in other counties, found that they "sometimes spend more to collect fees than they bring in" and the fees are therefore "not an effective, reliable, sustainable source of revenue for government or the courts." (Executive Summary, supra , p. 3.) The California Study also found that "[b]ecause of the high costs and low returns associated with trying to collect fees from low-income families, most of the revenue pays for collection activities, not for the care and supervision of youth." (Resnik et al., The California Study, supra , p. II-27.) It is instructive that the form Felony Order of Probation/Supervision issued by the court in this case directs defendants to make restitution and fee payments neither to the court or a county agency, but instead "to the Court's collection agency, AllianceOne," which describes itself as "one of the leading accounts receivable providers" worldwide. (< http//www.allianceoneinc.com/Welcome/all> [as of Nov. 30, 2018].)